**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JON D. JENKINS,

     Plaintiff,

                                 CASE NO.:

vs.

ST. PETERSBURG COLLEGE         **INJUNCTIVE RELIEF SOUGHT**
BOARD OF TRUSTEES

     Defendant.

_____/

**COMPLAINT FOR INJUNCTIVE RELIEF**

     **COMES NOW**, Plaintiff, JON D. JENKINS (hereinafter, "Plaintiff") by and through undersigned counsel, and hereby sues Defendant, ST. PETERSBURG COLLEGE BOARD OF TRUSTEES (hereinafter, "SPC" or "Defendant") and alleges as follows:

**INTRODUCTION**

     1.     This is an action for injunctive relief pursuant to the Americans with Disabilities Act, 42 U.S.C., Section 12101, *et seq*. (hereinafter, the "ADA") and the Rehabilitation Act of 1973, 29 U.S.C., Section 701, *et seq*. (hereinafter, the "Rehabilitation Act").

**ADA**

     2.     On July 26, 1990, Congress enacted the Americans with Disabilities Act (hereinafter, the "ADA"), 42 U.S.C. Section 12101, *et seq*.

     3.     Congress found, among other things, that:

          i.     Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

1

ii.     Historically, society has tended to isolate and segregate individuals with disabilities, and despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

iii.    Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

iv.     Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

v.      The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) – (3), (5) and (9).

4.      Congress explicitly stated that the purpose of the ADA was to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities, to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities, and to invoke congressional authority, including the power to

enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.  42 U.S.C. § 12101(b) (1) (2) and (4).

5.      Title II of the ADA applies to public entities, which are defined (relevant to this action) as any state or local government, any department, agency, special purpose district, or other instrumentality of a state or states or local government.  42 U.S.C. § 12131(1).

6.      Title II of the ADA requires that no disabled individual shall, by reason of their disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity.  42 U.S.C. § 12132.

7.      The implementing rules of Section 12132 in the educational sphere are codified in 28 C.F.R. § 35.101, *et. seq*.

8.      More specifically, state or local institutions may not exclude a handicapped individual from participation, or deny the benefits of services, programs, or activities of a public entity by:

    i.      Denying a disabled individual the opportunity to participate in or benefit from the aide, benefit or service;

    ii.      Affording a disabled individual an opportunity to participate in or benefit from the aide, benefit, or service that is not equal to that afforded others;

    iii.      Providing a disabled individual with an aid, benefit, or service that is not effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

28 C.F.R. § 35.130(a), (b)(1).

9.     A public entity must make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the modifications would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. § 35.130(b)(7).

10.     Further, a public entity must communicate with the disabled as effectively as it communicates with others by "furnish[ing] appropriate auxiliary aids and services where necessary to afford individuals with disabilities … an equal opportunity to participate in, and enjoy the benefits of, a service program, or activity of a public entity."  28 C.F.R. § 35.160(a)-(b).

11.     A public entity is prohibited from "requir[ing] an individual with a disability to bring another individual to interpret for him or her."  *Id*. at § 35.160(c)(1).

12.     A public entity is prohibited from "rely[ing] on an adult accompanying an individual with a disability to interpret or facilitation communication …"  *Id*. at § 35.160(c)(2).

## REHABILITATION ACT

13.     On September 26, 1973, Congress enacted the Rehabilitation Act of 1973 (hereinafter, the "Rehabilitation Act"), 29 U.S.C., Section 701, *et seq*.

14.     Congress found, among other things, that:

i.     Millions of Americans have one or more physical or mental disabilities and the number of Americans with such disabilities is increasing;

ii.     Individuals with disabilities constitute one of the most disadvantaged groups in society;

iii.     Disability is a nature part of the human experience and in no way diminishes the rights of individuals to live independently, enjoy self-determination, make choices, contribute to society, pursue meaningful careers, and enjoy full inclusion and integration

4

in the economic, political, social, cultural, and educational mainstream of American society;

    iv.    Individuals with disabilities continually encounter various forms of discrimination in such critical areas as employment, housing, public accommodations and education ; and

    v.    The goals of the Nation properly include the goal of providing individuals with disabilities with the tools necessary to achieve equality of opportunity, full integration and integration in society.

29 U.S.C. § 701(a)(1) – (7).

15.    Congress explicitly stated that the purpose of the Rehabilitation Act was to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society by adopting the policy of requiring that all programs, projects, and activities receiving [Federal] assistance shall be carried out consistent with the principles of:

    i.    Respect for individual dignity, personal responsibility, self-determination, and pursuit of meaningful careers, based on informed choice, of individuals with disabilities;

    ii.    Respect for the privacy, rights, and equal access (including the use of accessible formats), of the individuals;

    iii.    Inclusion, integration, and full participation of the individuals.

29 U.S.C. § 701(b) – (c).

16.    Under Section 794, no disabled individuals "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits or, or be subjected to

discrimination under any program or activity receiving Federal financial assistance …"  29 U.S.C. § 794(a).

17.     The implementing rules of Section 794 in the educational sphere are codified in 34 C.F.R. § 104.41, *et. seq*.

18.     More specifically, post-secondary education institutions that receive federal funding may not exclude a handicapped student from participation in any academic, research, occupational training, or benefit, on account of his disability.  34 C.F.R. § 104.43(a).

19.     Post-secondary educational institutions that receive federal funding may not exclude a handicapped student from any course, course of study, or other part of its education program or activity due to the student's disability. 34 C.F.R. § 104.43(c).

<u>Digital Accessibility Under the Rehabilitation Act</u>

20.     For purposes of website accessibility, the private body called the World Wide Web Consortium (W3C) promulgated the Web Content Accessibility Guidelines 2.0 (WCAG 2.0) in 2008

21.     WCAG 2.0 is the generally accepted, and industry standard, set of technical requirements for making websites, mobile software applications, and digital content accessible for individuals with disabilities.

22.     Effective January 18, 2018, the United States Architectural and Transportation Barriers Compliance Board has required that information and communication technology developed, procured, maintained or used by federal agencies covered by the Rehabilitation Act comply with WCAG 2.0, which was incorporated by reference.  36 C.F.R. 1194.1; 36 C.F.R., § 1194.1, Appendix A; 36 C.F.R. § 1194.1 Appendix C, § 702.

23.     The requirements of WCAG 2.0 are incorporated into 36 C.F.R. § 1194.21 et seq. which governs software applications and operating systems, web-based intranet and internet information and applications, telecommunications products, video and multimedia products, self-contained closed products, and desktop and portable computers.

### JURISDICTION, VENUE & PARTIES

24.     Jurisdiction of this Court arises under 28 U.S.C. Sections 1331 and 1343 for Plaintiff's claims arising under 42 U.S.C. Section 12101, *et seq.*, based upon Defendant's violations of Title II of the ADA (*see also* 42 U.S.C. § 12132).

25.     Jurisdiction of this Court also arises under 28 U.S.C. Section 1331 and Section 1343 for Plaintiff's claims arising under 29 U.S.C., Section 701, *et seq.*, based upon Defendant's violations of the Rehabilitation Act (*see also* 29 U.S.C. § 794(a))

26.     Defendant SPC is a Florida public post-secondary educational institution.

27.     Defendant SPC is a part of the executive branch of the State of Florida and governed by Florida Statues, Section 1000.01, *et seq.* and is a governmental entity as defined by Title II of the ADA, 42 U.S.C. 12131, *et seq.*  *See also* Fla. Stat., § 1000.21(3)(w) (defining SPC as a part of the "single Florida College System").

28.     Defendant SPC is governed by a local board of trustees that is responsible for SPC's policies related to course offerings, resources, student policies, and compliance with state and federal laws including, but not limited to, the ADA and Rehabilitation Act.

29.     At all times herein, all individuals characterized as "instructors," "adjunct professor(s)," "professor(s)," "staff" or "employee(s), "dean(s)," or "acting dean(s)," were employees or other authorized agents of SPC acting on behalf of—and with full authority provided by—SPC.

30. At all times herein, Defendant SPC receives federal financial assistance from the United States federal government including, but not limited to, direct grants of assistance as well as student financial aid within the definition of 34 C.F.R. §104.3(h).

31. In order to receive federal funds from the United States Department of Education, SPC annually signs a Certificate of Compliance certifying that it is in compliance with the Rehabilitation Act.

32. Plaintiff is a resident of the State of Florida, Pinellas County, Florida, is *sui juris*.

33. Plaintiff's name is Jon D. Jenkins and he is also known commonly publicly as both "Derrick Jenkins," an abbreviated version of his full legal name, and "Jon Jenkins."

34. At all times herein, Plaintiff is blind as a result of a motorcycle versus motor vehicle crash on November 5, 2013.

35. The Plaintiff lost both eyes in the accident and was diagnosed with—and continues to be diagnosed with—a Severe Traumatic Brain Injury and the following incident conditions: Cranial Diabetes Insipidus, Epilepsy, and Thermoregulation Impairment.

36. At all times herein, Plaintiff's blindness is an actual physical impairment that substantially limits one or more majority life activities (including but not limited to: performing manual tasks, seeing, walking, reading, communicating, and working) and as such, Plaintiff is a "qualified individual with a disability" and an "individual with a disability" as defined by 28 C.F.R. 35.108(1)(i) and 29 U.S.C. §705(20)(B)'s incorporation of the definition found within 42 U.S.C. § 12102(1).

37. At all times herein, Plaintiff is an enrolled student at SPC.

8

38.     At all times herein, Plaintiff met the academic and technical standards requisite for admission or participation in the educational program in which he was enrolled at SPC and is a "qualified handicapped person" within the definition of 34 C.F.R. §104.3(l)(3).

39.     At all times herein, Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C. §12131(2) as with or without his blindness, Plaintiff meets the eligibility requirements for the receipt of services or participation in the programs and activities offers by SPC.

40.     At all times herein, Defendant SPC's educational courses and all materials and instruction incident to the same are a "Program or Activity" within the meaning of 29 U.S.C. § 794(b)(2).

41.     At all times herein, Defendant SPC's educational courses and all materials and instruction incident to the same are "services, programs, or activities" within the meaning of 42 U.S.C. § 12132.

42.     Plaintiff was excluded from participation in, and denied the benefits of, the programs and activities of SPC by reason of his blindness and will be so excluded and denied unless and until Defendant is compelled to remedy the ADA violations which exist at SPC, including those set forth in this Complaint.

43.     Plaintiff was excluded from participation in, denied the benefits of—and subjected to discrimination—in the activities and programs offered by SPC solely by reason of his blindness and will be so restricted, excluded and limited in the future unless and until Defendant is compelled to remedy the Rehabilitation Act violations which exist at SPC, including those set forth in this Complaint.

44.     Plaintiff is without adequate remedy at law and is suffering irreparable harm, and reasonably anticipates that will continue to suffer irreparable harm unless and until Defendant is required to correct the conditions alleged herein.

45.     Given Defendant's conduct, apparent intention, and persistent non-compliance with ADA and Rehabilitation Act guidelines in violation of said laws, Plaintiff needs and is entitled to injunctive relief.

46.     The requested injunction is reasonably necessary to protect the legal rights of Plaintiff and will have no adverse effect on the public welfare.

47.     Any and all conditions precedent to this action have been fulfilled, performed or waived by the Defendant.

48.     Plaintiff has retained the undersigned counsel for the filing and prosecution of this action, and has agreed to pay the undersigned counsel reasonable attorney's fees, costs, and expenses incurred for this representation.  Plaintiff may recover these fees, costs, and expenses from the Defendant pursuant to 42 U.S.C. Section 12205, 12133, and 29 U.S.C. § 794a.

49.     Pursuant to 42 U.S.C. § 12133 and 29 U.S.C. § 794a, this Court is provided authority to grant injunctive relief to Plaintiff, including an order to enjoin the subject practices and to provide accessible programs, benefits, and services useable by individuals with disabilities to the extent required by the ADA.

## FACTUAL ALLEGATIONS

### Plaintiff's Disability

50.     On November 5, 2013, Plaintiff was rendered blind as a result of a crash between his motor cycle and a motor vehicle.

51.　　At the time Plaintiff arrived at the hospital on November 5, 2013, neurosurgeon Jonathan S. Hall, MD formally noted that Plaintiff's "[p]rognosis at this time is grave."

52.　　As a result of the accident, the Plaintiff was hospitalized for three months, 70 days of which were spent in the intensive care unit.

53.　　As a result of the November 5, 2013 accident, the Plaintiff underwent approximately thirty-two (32) procedures or surgeries.

54.　　As a result of the November 5, 2013 accident, Plaintiff lost both eyes in the accident and was diagnosed with—and continues to be diagnosed with—a Severe Traumatic Brain Injury and the following accompanying conditions: Cranial Diabetes Insipidus, Epilepsy, and Thermoregulation Impairment.

55.　　In order to read, Plaintiff utilizes a screen reader.

**Plaintiff's Enrollment at SPC**

56.　　On or about January 7, 2013, Plaintiff was admitted as a student at SPC and assigned a student identification number ending in 3621—a number which is maintained at all material times herein.

57.　　On or about January 7, 2013, Plaintiff began attending courses in SPC's "Associate of Arts" program of study.

58.　　Plaintiff was enrolled at SPC for the Spring Term 2012-2013 lasting from January 7, 2013 through and including May 3, 2013.

59.　　Following Plaintiff's completion of the Spring Term 2012-2013, Plaintiff was involved in the November 5, 2013 accident alleged *supra*.

60.　　Following the November 5, 2013 accident, Plaintiff resumed studies at SPC.

61.    At all material times herein, Plaintiff's major at SPC is mechanical engineering or "Engineering, Pre-bacc," and he is enrolled in an Associate in Science program.

62.    Plaintiff was enrolled at SPC for the Summer Term 2015-2016 lasting from May 16, 2016 through and including July 22, 2016.

63.    Plaintiff's grade point average for the Summer Term 2015-2016 was 4.0 on a scale of 0.0 to 4.0.

64.    Plaintiff was enrolled at SPC for the Fall Term 2016-2017 lasting from August 15, 2016 through and including December 9, 2016.

65.    Plaintiff's grade point average for the Fall Term 2016-2017 was 4.0 on a scale of 0.0 to 4.0.

66.    Plaintiff was enrolled at SPC for the Spring Term 2016-2017 lasting from January 9, 2017 through and including May 5, 2017.

67.    Plaintiff's grade point average for the Spring Term 2016-2017 was 3.5 on a scale of 0.0 to 4.0.

68.    Plaintiff was enrolled at SPC for the Summer Term 2016-2017 lasting from May 15, 2017 through and including July 21, 2017.

69.    Plaintiff's grade point average for the Summer Term 2016-2017 was 3.0 on a scale of 0.0 to 4.0.

70.    Plaintiff was enrolled at SPC for the Fall Term 2017-2018 lasting from August 14, 2017 through and including December 8, 2017.

71.    Plaintiff's grade point average for the Fall Term 2017-2018 was 3.5 on a scale of 0.0 to 4.0.

72.     Plaintiff was enrolled at SPC for the Spring Term 2017-2018 lasting from January 8, 2018 through and including May 4, 2018.

73.     Plaintiff's grade point average for the Spring Term 2017-2018 was 4.0 on a scale of 0.0 to 4.0.

74.     Plaintiff was enrolled at SPC for the Summer Term 2017-2018 lasting from May 14, 2018 through and including July 20, 2018.

75.     Plaintiff's first mathematics and science-related coursework began during the Summer Term 2017-2018.

76.     Plaintiff's grade point average for the Summer Term 2017-2018 was 2.0 on a scale of 0.0 to 4.0.

77.     Plaintiff is enrolled at SPC for the Fall Term 2018-2019 lasting from August 8, 2018 through and including December 7, 2018.

78.     Plaintiff's completion of the Fall Term 2018-2019 is ongoing as of date of this Complaint.

79.     Since resuming his studies at SPC, in addition to maintaining grade point averages of 4.0, 4.0, 3.5, 3.0, 3.5, and 4.0, Plaintiff has been involved in extra-curricular activities.

80.     Plaintiff has been involved in Toastmasters and has established a volunteering connection between SPC and Sawgrass Elementary.

81.     Prior to resuming studies at SPC, Plaintiff also began a volunteer speaking presentation in which Plaintiff presents the story of his accident, the wide-reaching consequences of his choices, and the lessons to be learned.

82.     Plaintiff does not accept or receive compensation for his volunteer speaking presentations though he is sometimes transported to the speaking site.

83.     Plaintiff gives his volunteer speaking presentation primarily in Pinellas County Florida schools and has also presented in Hillsborough County Florida and Pasco County Florida schools.

84.     Plaintiff additionally gives his volunteer speaking presentation 12-16 times per year in conjunction with the Pinellas County Florida School system's FACE IT program (Families Acting Collaboratively to Educate and Involve Teens")

85.     Plaintiff's volunteer speaking presentation has also presented to organizations such as the incoming rookies of the Tampa Bay Buccaneers professional football team and the United States Coast Guard about the realities of drinking and driving and the consequences of such choices.

86.     In addition to presenting in schools, Plaintiff also speaks monthly to the Victim Impact Panel ("VIP"), an awareness program for offenders convicted of driving under the influence, facilitated by Mothers Against Drunk Driving (MADD).

87.     Further, Plaintiff also speaks to the Pinellas County Sixth Judicial Circuit's Juvenile Diversion Services Program called Removing Intoxicated Drivers ("RID").

88.     Despite overcoming incredible odds to survive, Plaintiff has been repeatedly subjected to SPC's discriminatory policies and practices.

89.     Plaintiff has consistently requested assistance from SPC concerning the instances of discrimination alleged herein, and as a result has been involved in extensive and multiple meetings, discussions, and communications; however, the issues described herein have not been cured.

## SPC COURSES, CURRICULUM, AND SERVICES
## <u>INACCESSIBLE TO BLIND STUDENTS</u>

### <u>"MYCOURSES"</u>

90.　　SPC utilizes, and provides to its students, including Plaintiff, a website it has named "MyCourses."

91.　　MyCourses is a learning management system ("LMS") that runs on a software or program called "Canvas" that is distributed by Instructure.

92.　　SPC's MyCourses system, which utilizes Canvas, is inaccessible to Plaintiff and does not comply with WCAG 2.0.

93.　　MyCourse's inaccessibility includes, but is not limited to, missing alternative text, inaccessible links, upload areas, calendar features, and inaccessible navigation.

94.　　MyCourse's platform system, Canvas is, by Instructure's own admission, not fully compliant with WCAG 2.0.

95.　　For example, as of this filing, Instructure's website states as follows:

　　i.　　"Some elements do not have appropriate text alternatives."

　　ii.　　"A few headings are not identified correctly."

　　iii.　　"Some labels or instructions are not associated correctly, or the information present to screen reader users is not equivalent."

　　iv.　　"Most, but not all, content is keyboard accessible."

　　v.　　"Heading structure is present, though not always complete."

　　vi.　　"Important labels and instructions are not always accessible."

　　vii.　　"ARIA (Accessible Rich Internet Applications) attributes are sometimes incorrect, which can present incorrect roles, states, or properties to screen reader users."

96.     SPC has never provided Plaintiff with a fully-accessible format of MyCourses.

97.     As a result of SPC's actions, Plaintiff was and is—solely by reason of his blindness—excluded from participation in MyCourses, which is a program, activity, and benefit offered by SPC.

## ENC 1102 COMPOSITION II

98.     During the Spring Term 2017-2018, Plaintiff was enrolled in SPC's course titled, "ENC 1102 Composition II" (hereinafter, "Comp II").

99.     SPC adjunct professor Antonia Lewandowski initially taught the Comp II course in which Plaintiff was enrolled.

100.    SPC possessed knowledge over Lewandowski's syllabus for Comp II and did not disapprove of it.

101.    Pursuant to Lewandowski's syllabus for Comp II, "Discussions and Other Activities" accounted for 30% of a student's final grade.

102.    Pursuant to Lewandowski's syllabus for Comp II, "[Students] are expected to read the text!  Composition is such a vast subject, and you'll learn much just by just reading."

103.    Pursuant to Lewandowski's syllabus for Comp II, "[Students] should come to class and the online environment ready to engage yourself and others in a meaningful, substantive activity."

104.    On or about January 8, 2018, Plaintiff was notified that he qualified for multiple accommodations to be provided for the Comp II course via an e-mail titled "[AS Jon Jenkins – [student ID number ending in 3621] – ENC 1102.98 – Composition II (CRN: 1715) – Notification of Academic Support Services Spring 2018" (hereinafter, Comp II Accommodations Notice").

105.    Plaintiff's accommodations for Comp II included, but were not limited to: (1) Adaptive Technology (including alternative media); and (2) the ability to digitally record learning situations.

106.    In addition, Plaintiff was noted as "Blind" under the "additional Notification(s) Regarding Student" section of the Comp II Accommodations Notice.

107.    A copy of the Comp II Accommodations Notice was sent to, or made available to, SPC Instructor Antonia Lewandowski and SPC Instructor Sharon Williams.

108.    A copy of the Comp II Accommodations Notice was sent to, or made available to, SPC Communications Department Academic Chair Li-Lee Tunceren.

**Inaccessible Worksheet Articles**

109.    On or about February 22, 2018, Instructor Lewandowski distributed a worksheet containing approximately four letters to the editor excerpts from the Tampa Bay Times concerning an instance of gun violence (hereinafter, 'Worksheet Articles"), to students.

110.    The Worksheet Articles consisted of approximately four to five letters to the editor from the Tampa Bay Times that were physically cut and pasted onto a copied paper and distributed in-class by Instructor Lewandowski.

111.    To complete the Worksheet Articles assignment, students were instructed to read each letter on the page, select the letter that impacted them the most, and discuss that letter in small groups within the class session.

112.    The Worksheet Articles assignment was to be completed in-class.

113.    At the time the Worksheet Articles assignments was distributed, Plaintiff requested that an accessible version of the Worksheet Articles be provided so that he could engage in conversation based upon the same reading as the other students.

114.    Upon making his request in class to Instructor Lewandowski, Instructor Lewandowski stated that she "pulled it out of the newspaper" and she could not provide an accessible version of the Worksheet Article.

115.    Instructor Lewandowski then suggested that "somebody in [Plaintiff's] house can read it to you."

116.    Ultimately, Instructor Lewandowski never provided any copy of the Worksheet Article utilized by all other students but instead suggested that Plaintiff generally "look at the newspaper online" because "they're still writing letters."

117.    As a result of Instructor Lewandowski's actions, Plaintiff was—solely by reason of his blindness—excluded from participation in the Worksheet Article, a program, activity, and benefit offered by SPC.

118.    On February 22, 2018, after having notified Instructor Lewandowski and the SPC accessibility office in person concerning the inaccessibility of the Worksheet Articles, Plaintiff with the assistance of his advocate, Jennifer Jenkins, informed SPC via e-mail that Plaintiff was excluded from participation regarding the Worksheet Article.

**Inaccessible Extra Credit Opportunity**

119.    Additionally, under Instructor Lewandowski, students in the Comp II course were provided with the opportunity to earn extra credit by volunteering to read sections of the Comp II textbook aloud to the class (hereinafter, "Extra Credit Opportunity").

120.    Plaintiff requested Instructor Lewandowski for a comparable Extra Credit Opportunity so that he would be provided equal access to extra credit as non-blind students.

18

121.   On February 20, 2018, Instructor Lewandowski stated that she would provide Plaintiff the Extra Credit Opportunity by "I give your credits for reading…no, I give you credits for asking questions."

122.   Plaintiff responded to Instructor Lewandowski inquiring, "Is that to say I have to think, I have to generate a question just to get [access to the Extra Credit Opportunity]?"

123.   Instructor Lewandowski confirmed that instead of undertaking objectively determinable act (i.e. completing an unassigned task like reading aloud)—as sighted students could—to gain access to the Extra Credit Opportunity, she was instead giving Plaintiff extra credit because "it really is that you automatically ask good questions … so we're using that particular skill instead of giving reading opportunities."

124.   Confusingly, Instructor Lewandowski then introduced a measure of subjectivity into the substituted Extra Credit Opportunity by stating, "I thought that by giving you points for *good* questions, that was being fair." (Emphasis added).

125.   Instructor Lewandowski's imposed "solution" to cure the exclusion of Plaintiff from the Extra Credit Opportunity either: (1) excluded Plaintiff from similar participation because extra credit was awarded for simply discharging a pre-existing duty required by the syllabus (i.e., "com[ing] to class and the online environment ready to engage yourself and others in a meaningful, substantive activity"); or (2) excluded Plaintiff from similar participation because the "solution" provided Plaintiff access to extra credit only after a subjective determination of whether the Plaintiff had put forth a "*good*" question whereas a sighted student was provided access to extra credit based only upon an objective fact (i.e., did the student read aloud or not).

126.   Defendant failed to provide Plaintiff with access to any activity comparable to the Extra Credit Opportunity.

127.    As a result of Instructor Lewandowski's actions, Plaintiff was—solely by reason of his blindness—excluded from participation in the Extra Credit Opportunity, a program, activity, and benefit offered by SPC.

### Inaccessible Written Assignment Feedback

128.    Further, Instructor Lewandowski provided students in Comp II, including Plaintiff, written feedback on completed assignments (hereinafter, "Written Assignment Feedback").

129.    However, the Written Assignment Feedback provided by Instructor Lewandowski was handwritten on the paper-based assignments and therefore inaccessible to Plaintiff.

130.    When confronted with the inaccessible nature of the Written Assignment Feedback, Instructor Lewandowski's proposed solution was for Plaintiff to solicit a classmate to read the feedback to Plaintiff.

131.    As a result of Instructor Lewandowski's actions, Plaintiff—solely by reason of his blindness—excluded from participation in Written Assignment Feedback, a program, activity, and benefit offered by SPC.

### Inaccessible Peer Feedback Activity

132.    Similarly, Instructor Lewandowski intermittently required students in Comp II to share and assess other student's writing assignments during class as a means of learning (hereinafter, "Peer Feedback Activity").

133.    The in-class Peer Feedback Activity was based upon computer-printed hardcopy versions of each student's writing assignments.

134.    Instructor Lewandowski provided no means by which Plaintiff could obtain an accessible version of a classmate's writing assignments to complete or participate in the Peer Feedback Activity.

135.    When Plaintiff requested an accessible means to participate in the Peer Feedback Activity, Instructor Lewandowski told Plaintiff to try and use a phone-based software application to read his peer's writing.

136.    As a result of Instructor Lewandowski's actions, Plaintiff was—solely by reason of his blindness—excluded from participation in the Peer Feedback Activity, a program, activity, and benefit offered by SPC.

137.    On or about March 2, 2018, SPC relieved Instructor Lewandowski of her duties teaching Comp II.

138.    On or about March 2, 2018, SPC replaced Instructor Lewandowski with Instructor Sharon Williams.

139.    On or about March 2, 2018, SPC assured Plaintiff that, "Professor Williams has met with Accessibility Services and the Dean of Communications and understands that all materials offer in and out of class will be provided in an accessible version prior to classroom due date and/or activity."

**Inaccessible InQuizitive Program**

140.    Instructor Williams utilized an online software program called "InQuizitive" (hereinafter, "InQuizitive Program") marketed by publisher W.W. Norton & Co.

141.    The InQuizitive Program aids students in Comp II through the use of adaptive technology that can focus teaching content based upon the type of questions a user correctly or incorrectly answers.

142.    The InQuizitive Program provides the user with real-time feedback, alternative questions, and instructive teaching.

143.   The InQuizitive Program was used by Instructor Williams to benefit SPC students enrolled in Comp. II, including Plaintiff.

144.   The InQuizitive Program was inaccessible to Plaintiff due to its highly visual components, inaccessible links, non-opening pages, and non-readable pages, among other issues.

145.   In order to make any progress at all in the InQuizitive Program, Plaintiff was required to rely on a classmate during class time.

146.   On or about April 24, 2018, Plaintiff notified Instructor Williams of that he was unable to utilize the InQuizitive Program.

147.   On or about April 24, 2018, Instructor Williams responses, "we can work together regarding an alternative assignment."

148.   No alternative assignment(s) were ever provided.

149.   As a result of Instructor Williams' actions, Plaintiff was—solely by reason of his blindness—excluded from participation in the InQuizitive Program, a program, activity, and benefit offered by SPC.

## MAC 1105 COLLEGE ALGEBRA

150.   During the Spring Term 2017-2018, Plaintiff was enrolled in SPC's course titled, "MAC 1105 College Algebra" (hereinafter, "College Algebra").

151.   Plaintiff's enrollment in College Algebra came only after an initial instance in which SPC attempted to confine Plaintiff to a lower-level mathematics course that it believed to be accessible.

152.   However, pursuant to   Plaintiff's aptitude and his subsequent satisfactory performance on a "PERT math placement test" administered by SPC, SPC permitted Plaintiff to enroll in College Algebra.

22

153.    On or about January 8, 2018, Plaintiff was notified that he qualified for multiple accommodations to be provided for the College Algebra course via an email titled "[AS Jon Jenkins – [student ID number ending in 3621] – MAC 1105.46 – COLLEGE ALGEBRA (CRN: 1235) – Notification of Academic Support Services Spring 2018" (hereinafter, College Algebra Accommodations Notice").

154.    Plaintiff's accommodations for College Algebra included, but were not limited to: (1) Adaptive Technology (including alternative media); and (2) the ability to digitally record learning situations.

155.    In addition, Plaintiff was noted as "Blind" under the "additional Notification(s) Regarding Student" section of the College Algebra Accommodations Notice.

156.    SPC professor Mark Billiris taught the College Algebra course in which Plaintiff was enrolled.

157.    A copy of the College Algebra Accommodations Notice was sent to, or made available to, SPC Instructor Mark Billiris.

158.    SPC possessed knowledge over Billiris' syllabus for College Algebra and did not disapprove of it.

**Inaccessible MyMathLab Software**

159.    Pursuant to Billiris' syllabus for College Algebra, "Students will also need to be able to use a calculator, register to use a software produce (i.e., MyMathLab, ALEKS, etc.)…"

160.    Pursuant to Billiris' syllabus for College Algebra, the "Required Textbook and Other Resource[s]" included a computer program called "MyMathLab" (hereinafter, "MML").

161.    MML is an online-based mathematics laboratory program, also known as "MyLab Math," distributed by publisher Pearson Education, Inc.

162.     Students in Instructor Billiris' College Algebra class—including Plaintiff—were required to use MML to satisfy the requirements of College Algebra as MML was used to administer quizzes and tests.

163.     Generally, MML aids students in College Algebra through the use of adaptive technology that can focus teaching content based upon the type of questions a user correctly or incorrectly answers.

164.     MML provides the user with immediate feedback, alternative questions, and a "help" feature.

165.     Since at least November 8, 2017, SPC knew that MML was inaccessible to a blind user.[1]

166.     Prior to being permitted to enroll in Instructor Billiris' College Algebra course, SPC unsuccessfully attempted to place Plaintiff in a college algebra course taught by a different SPC instructor (i.e., Olga Timofeeva), because "she doesn't use MML" and "she doesn't require MML."

167.     The format of Instructor Billiris' College Algebra class included a brief lecture at the beginning of each class session followed by instruction that all students work independently within MML for the remainder of class.

168.     All work done outside of College Algebra class was to be completed using MML.

169.     MML was not accessible to Plaintiff solely due to his blindness.

170.     MML does not comply with WCAG 2.0.

171.     No equivalent alternative to MML—containing the benefits and features of MML—was provided to Plaintiff by SPC.

---

[1] Via a November 8, 2018 e-mail, SPC acknowledged that MML was not accessible through its attempt to place Plaintiff in College Algebra Course Sections that did not use MML.

172.     On account of MML's inaccessibility and the format of Instructor Billiris' College Algebra course, Plaintiff was regularly excluded because no SPC employee would alert Plaintiff that students were silently working in MML.

173.     In one such instance, on or about January 24, 2018, Plaintiff sat in silence for approximately 30 minutes during the College Algebra class while waiting for Instructor Billiris to begin class.

174.     Finally, after 30 minutes of sitting in silence, Plaintiff was informed by a peer that all students were working in the MML program.

175.     After discovering the issue, Plaintiff discussed the same with Instructor Billiris, and Instructor Billiris informed Plaintiff that he was under the impression that Plaintiff would use College Algebra class time to complete other school work.

176.     During the conversation, Instructor Billiris intimated that he did not know that MML was inaccessible to Plaintiff.

177.     On or about January 28, 2018, SPC employee Aimee Stubbs acknowledged that "In [Plaintiff's] case, we could not rely on the publisher materials or Braille [so SPC has attempted to create accessible material]."

178.     On or about February 20, 2018, SPC employee Kelli Mitchell, in reference to Plaintiff's experience in College Algebra, acknowledged to the Plaintiff that, "*You are not going to have the same curriculum as everyone else*, just like you are not going to be able to learn the material the same was as other students." (emphasis added).

179.     Instead of providing accessible mathematics software, or not using MML altogether, SPC provided what it described as a "sighted math person in [Plaintiff's] math classes so that [Plaintiff can work in [MML]."

180.     The "sighted math person" described by SPC was provided to Plaintiff, only during class time, multiple weeks into the College Algebra course.

181.     The Sighted Math Person and was assigned to sit in class and read and scribe limited portions of material from MML while Plaintiff verbalized what do so that the Sighted Math Person could input Plaintiff's work into MML.

182.     As a result of SPC's actions, Plaintiff was—solely by reason of his blindness—excluded from participation in the MML, a program, activity, and benefit offered by SPC.

**Inaccessible College Algebra Notes**

183.     During College Algebra, SPC provided instruction to College Algebra students that included notes from live in-class lecture.

184.     SPC failed to provide Plaintiff with any accessible notes from the live class sessions.

185.     Although SPC did—for 2-3 class periods at the beginning of the semester only—attempt to provide notes from the live class sessions, SPC relied solely on soliciting (with varying degrees of success) fellow College Algebra students to agree to place carbon paper underneath their handwritten notes and provide a copy to SPC employee Kelli Mitchell (who is trained in neither transcription nor in mathematics) for transcription and delivery to Plaintiff.

186.     In the few (2-3) instances when College Algebra notes were in fact transcribed for the Plaintiff by SPC's employee Kelli Mitchell, such notes were inaccurate or incomplete and delivered days or weeks after the course content was taught.

187.     As a result of SPC's actions, Plaintiff was—solely by reason of his blindness—excluded from obtaining College Algebra notes from class sessions, which are a program, activity, and benefit offered by SPC.

## Inaccessible and Unequal College Algebra Curriculum

188.    On or about February 20, 2018, SPC employee Kelli Mitchell acknowledged Plaintiff would be required to receive a different College Algebra curriculum due to his blindness, stating, "You are not going to have the same curriculum as everyone else."

189.    Instead of providing an accessible math software, not using MML altogether, and providing accessible class notes, SPC proposed that Plaintiff, "can work on Word doc reviews in class while others are in MML."

190.    The "Word doc reviews" referenced by SPC were a substantially condensed version of the College Algebra curriculum, limited by the amount of College Algebra curriculum teaching materials that SPC was willing to transcribe.

191.    The "Word doc reviews" also contained some mathematical problems selected by SPC from the complete universe of College Algebra teaching materials provided to all sighted College Algebra students.

192.    The Word doc reviews indicated the existence of a separate, unequal College Algebra curriculum that was provided to Plaintiff by SPC.

193.    As a result of SPC's actions, Plaintiff was—solely by reason of his blindness— excluded from participation in the full College Algebra curriculum, a program, activity, and benefit offered by SPC.

## Inaccessible College Algebra Textbook

194.    Plaintiff also, despite purchasing the required textbook for College Algebra, never received an accessible version of the required textbook.

195.   As a result of SPC's actions, Plaintiff was—solely by reason of his blindness—excluded from participation in the textbook for College Algebra, a program, activity, and benefit offered by SPC.

### Inaccessible College Algebra Videos

196.   Instructor Billiris also provided students with videos posted to SPC's "MyCourses" online interface (hereinafter, "College Algebra Videos").

197.   Students in College Algebra were required to view the College Algebra Videos.

198.   The College Algebra Videos were made available, as an educational tool, to the sighted College Algebra students in Plaintiff's course.

199.   The College Algebra Videos were inaccessible for Plaintiff due to their visual nature.

200.   Neither the College Algebra Videos nor their delivery means comply with WCAG 2.0.

201.   Plaintiff made multiple requests for accessible formats of the College Algebra Videos.

202.   Plaintiff was never provided an accessible format of the College Algebra Videos.

203.   As a result of SPC's actions, Plaintiff was—solely by reason of his blindness—excluded from participation in the College Algebra Videos, a program, activity, and benefit offered by SPC.

### CGS 1070 BASIC COMPUTER & INFO LITERACY

204.   During the term Spring Term 2017-2018, Plaintiff was enrolled in SPC's course titled, "CGS 1070 Basic Computer & Info Literacy" (hereinafter, "Basic Computer Course").

205.    In order to complete an Engineering Associate degree program at SPC, SPC requires students complete a "computer information and literacy exam" or successfully complete a "computer/information literacy competency course."

206.    The Basic Computer Course satisfies SPC's "computer/information literacy competency course" requirement.

207.    Plaintiff enrolled in the Basic Computer Course solely to satisfy SPC's academic requirement to obtain his degree.

208.    On or about January 8, 2018, Plaintiff was notified that he qualified for multiple accommodations to be provided for the Basic Computer Course via an email titled "[AS Jon Jenkins – [student ID number ending in 3621] – CGS 1070.57 – BASIC COMPUTER & INFO LITERACY (CRN: 3437) – Notification of Academic Support Services Spring 2018" (hereinafter, Basic Computer Accommodations Notice").

209.    Plaintiff's accommodations for the Basic Computer Course included, but were not limited to: (1) Adaptive Technology (including alternative media); and (2) the ability to digitally record learning situations.

210.    In addition, Plaintiff was noted as "Blind" under the "additional Notification(s) Regarding Student" section of the Basic Computer Accommodations Notice.

211.    SPC professor Jennifer Gregor taught the Basic Computer Course in which Plaintiff was enrolled.

212.    A copy of the Basic Computer Accommodations Notice was sent to, or made available to, SPC Instructor Gregor.

213.    SPC possessed knowledge over Instructor Gregor's syllabus for the Basic Computer Course and did not disapprove of it.

214.    SPC provided the Basic Computer Course entirely online with no classroom component.

**Inaccessible Remote Learning System**

215.    SPC utilized an inaccessible system (hereinafter, "Remote Learning System") to deliver the content of the Basic Computer Course including, but not limited to, the course modules and quizzes.

216.    More specifically, the SPC Remote Learning System's first assignment and/or quiz were not able to be audibly read by a screen reader over the system's time announcing each second remaining.

217.    Additionally, the Remote Learning System's quizzes did not read pop-up answers as clickable buttons or links.

218.    The Remote Learning System's answers, within non-timed assignments, only read as a "link" when selected, not as any particular answer.  As such, the blind Plaintiff was provided a multiple choice question(s) with several answer options, all of which read aloud as "link."

219.    The Remote Learning System's "proceed" button navigated Plaintiff to a different, unrelated page.

220.    Plaintiff was unable to properly access the Basic Computer Course and, as such, was unable to adequately complete the work and received a failing "F" grade.

221.    On or about May 17, 2018, after Plaintiff protested the "F" grade, SPC's Acting Dean of the College of Computer & Information Technology, John Long, changed Plaintiff's grade to an "I," standing for "incomplete."

222.   Incident to changing Plaintiff's grade, Dean Long responded, "we are working on a plan for you to have access to all materials for the course and will be back in touch with further details."

223.   Plaintiff was never provided an accessible format of the Remote Learning System.

224.   As a result of SPC's actions, Plaintiff was—solely by reason of his blindness—excluded from participation in the Remote Learning System and the Basic Computer Course, a program, activity, and benefit offered by SPC.

## MAC 1114 TRIGONOMETRY

225.   During the Summer Term 2017-2018, Plaintiff was enrolled in SPC's course titled, "MAC 1114 Trigonometry" (hereinafter, "Trig").

226.   SPC adjunct professor Jennifer MacQuarrie teaches the Trig course in which Plaintiff was enrolled.

227.   SPC possessed knowledge over MacQuarrie's syllabus for Trig and did not disapprove of it.

228.   On or about May 10, 2018, Plaintiff was notified that he qualified for multiple accommodations to be provided for the Trig course via an email titled "[AS Jon Jenkins – [student ID number ending in 3621] – MAC 1114.11 – TRIGONOMETRY (CRN: 1515) – Notification of Academic Support Services Summer 2018" (hereinafter, Trig Accommodations Notice").

229.   Plaintiff's accommodations for Trig included, but were not limited to: (1) Adaptive Technology (including alternative media); and (2) the ability to digitally record learning situations.

230.   In addition, Plaintiff was noted as "Blind" under the "additional Notification(s) Regarding Student" section of the Trig Accommodations Notice.

231.    A copy of the Trig Accommodations Notice was sent to, or made available to, SPC Instructor MacQuarrie.

### Inaccessible Trig Textbook

232.    SPC's Trig class requires a textbook published by Pearson Education, Inc. (i.e., "Precalculus: Enhanced w/ Graph Util," ISBN: 9780134119281 (hereinafter, "Trig Textbook").

233.    On or about May 16, 2018, Plaintiff rented the digital version of the Trig Textbook through SPC.

234.    Incident to Plaintiff's rental of the digital version of the Trig Textbook, Plaintiff was required to install a computer program called "Yuzu," which is distributed by Barnes & Noble College Booksellers, LLC.

235.    "Yuzu" is the delivery mechanism for the digital version of the Trig Textbook.

236.    SPC represented that Yuzu is "compatible with iPad®, iPhone®, and iPod touch®."

237.    SPC represented that Yuzu is compatible with "Google Chrome®, Mozilla Firefox® or Microsoft Edge, Internet Explorer® version 9 or later, or Safari® version 7 or later."

238.    Due to Yuzu's non-accessibility, the digital version of the Trig Textbook is not fully accessible.

239.    More specifically, the links in the digital version of the Trig Textbook do not confirm that any link has opened.

240.    The search function within the digital version of the Trig Textbook does not work properly as it will return a list of results but will not open any of the linked results.

241.    The pagination of the digital version of the Trig Textbook does not align with the page numbers listed for all students in the Trig syllabus.

242.    For example, in the Trig syllabus, Trig Textbook section 6.1 is stated to begin on page 372.

243.    In the digital version of the Trig Textbook however, section 6.1 begins on page 363.

244.    On or about May 16, 2018, Plaintiff informed SPC employee Kelli Mitchell that the pagination of the digital version of the of the Trig Textbook does not align with the page numbers listed for all students in the Trig syllabus.

245.    SPC's proposed solution to the non-accessibility of the digital version of the Trig Textbook was to direct Plaintiff to an HTML (hypertext markup language) version of the Trig Textbook via SPC's "MyCourses" online interface.

246.    The HTML version of the Trig Textbook is not fully accessible.

247.    For example, Plaintiff's use of the 'rotor' feature to navigate between lines, pages, or sections, in the HTML version of the Trig Textbook results in re-routing of the Plaintiff to the beginning of the text.

248.    The HTML version of the Trig Textbook provides no way to search by sections or terms, only page numbers.

249.    On May 18, 2018, rather than employing a different Trig Textbook, SPC employee Kelli Mitchell simply responded to the Plaintiff that, "We cannot guarantee accessibility of the textbook any other way [than providing a link to Pearson's HTML version]."

250.    The seemingly simple act of Plaintiff merely locating course subject matter listed on the syllabus is consistently transformed into a significantly frustrating struggle that is detrimental to Plaintiff's educational results due to SPC's refusal to provide an accessible digital version of the Trig Textbook or an accessible HTML version of the Trig Textbook.

251.    While SPC provides all sighted students the potential benefit of access to the Trig Textbook via hard copy, on a phone or computer the digital version, Plaintiff is provided no such benefit.

252.    Instead, Plaintiff, unlike all other sighted Trig students—in order to have even marginal access to the Trig Textbook—is tethered to either a laptop or a desktop computer.

253.    When Plaintiff explained to Instructor MacQuarrie that blind users routinely utilize mobile technology in everyday life, MacQuarrie belittlingly responded, "Derrick, you're going to have to use your laptop.  And that's just the way it is.  And when you get into the real world—you know, with an engineering job, you're using a laptop.  People aren't doing work on their phone, that's just not the way it works."

254.    On May 31, 2018, during a further in-person discussion with Instructor MacQuarrie about navigation of the HTML version of the Trig Textbook, Instructor MacQuarrie represented that "this typing-up [of any portions of the Trig Textbook] that we're doing is not necessary at all, because your textbook happens to be one hundred percent accessible via your laptop."

255.    Later in the conversation, Plaintiff stated, "the textbook, like I said is not…I don't know who told you…"

256.    Instructor MacQuarrie then cut-off the Plaintiff mid-sentence, stating, "It is."

257.    In response Plaintiff asked Instructor, "have you tried it yourself … unless you haven't tried it yourself you cannot attest that it is 100% accessible."

258.    In response, Instructor MacQuarrie said, "*Please don't argue with me, I have been told by many sources that it is*" and "***it is up to you to [discuss with SPC] and learn how to navigate this textbook***." (emphasis added).

259.    Further in the conversation, after Plaintiff confirmed to Instructor MacQuarrie that he was attempting to access the Trig Textbook on both his laptop and iPhone, instructor MacQuarrie dismissed Plaintiff's use of his iPhone as an accessibility tool, stating, "don't use your phone … because it's a textbook, it's not going to work on your phone."

260.    Instructor MacQuarrie emphasized, "if you're trying to navigate it through your phone that's the problem, it's not going to work like that."

261.    After Plaintiff noted that his disability requires Plaintiff to rely on his phone, Instructor MacQuarrie said, "Derrick, you need to make a change…[the Trig Textbook] is not 100% accessible for your phone but it is with your laptop."

262.    As a result of SPC's actions, Plaintiff—solely by reason of his blindness—was excluded from participation in the Trig Textbook, assignments, quizzes, readings, and learning opportunities provided by the Trig course, all of which are each a program, activity, and benefit offered by SPC.

**Inaccessible Trig Quiz**

263.    In the Trig course, quizzes are worth 16% of a student's total grade.

264.    Quiz questions are sourced directly from the Trig Textbook and are specifically identified in the Trig syllabus by their corresponding section and page number in the Trig Textbook.

265.    "Quiz 1" consisted of six questions selected from Trig Textbook sections 6.1-6.4.

266.    In an attempt to make Quiz 1 accessible, SPC emailed Plaintiff a copy of the Quiz 1 questions, transcribed by an SPC employee, so that Plaintiff could answer the questions.

267.    On May 16, 2018, Plaintiff informed SPC employee Kelli Mitchell that he "cannot find the section number or problem number on what you sent to know which section each question is from."

268.    Plaintiff also noted, "[the quiz] seems to be missing a question because the syllabus lists six questions and their corresponding page numbers."

269.    Plaintiff received no substantive feedback or revised copy of Quiz 1.

270.    On or about May 22, 2018, Plaintiff timely submitted his responses to Trig "Quiz 1" to Instructor MacQuarrie.

271.    On May 22, 2018, Instructor MacQuarrie responded to the Plaintiff noting that "I only see 4 out of the 6 quiz questions in your Quiz 1 email."

272.    On May 23, 2018, Plaintiff responded to Instructor MacQuarrie noting that "I was only given four questions, though that is hard to discern because there were no question or section numbers for the questions" and "some of the questions were confusing because I wasn't sure where the quested [sic] began or ended as there is nothing distinguishing any text from the rest."

273.    On May 23, 2018, Instructor MacQuarrie responded that "there is a complete, screen reader friendly, list of all quiz questions which includes sections, page number, problem number and due date" and that the list of problems provided by SPC employee Kelli Mitchell contained no errors.

274.    On May 23, 2018, Plaintiff responded, again reiterating to SPC, via instructor MacQuarrie, that, "*the numbers and sections on the course list do not correspond to the digital book I have*" and "[the quiz text sent to Plaintiff by SPC employee Kelli Mitchell] appears to only have four questions … the quiz was missing information to enable a blind user to discern between the questions beyond guessing." (emphasis added).

275.    On May 23, 2018, Instructor MacQuarrie acknowledged that version of Quiz 1 sent to the Plaintiff only contained 5 questions and not 6, but, as to the pagination issue MacQuarrie responded, "I am told repeatedly that that is false.  Your laptop version does match up."

276.    Despite not receiving a full copy of Quiz 1 and repeatedly communicating the non-readability of the remaining questions, Instructor MacQuarrie's solution was to, "grade yours out of five."

277.    According to Instructor MacQuarrie on May 21, 2018, she viewed this as an acceptable solution because she purportedly adjusted Plaintiff's grade to correspond to a test given on only five questions.

278.    Instructor MacQuarrie added, "I drop the lowest quiz chances are that will be your lowest quiz and that one gets dropped."

279.    Instructor MacQuarrie's solution was not acceptable because it deprived the Plaintiff of the benefits of:

   i.      Completing the same Quiz 1 questions as sighted students;

   ii.     Being given the equal opportunity as signed Trig students to achieve points and not have a grade calculated on assumption/extrapolation (i.e., Instructor MacQuarrie calculated Plaintiff's grade by transforming Plaintiff's 2/5 score (40%) into 2.4/6, thus completely eliminating Plaintiff's possibility of achieving a 3/6, or 50% score);

   iii.    The ability to drop a low quiz score earned on the merits of low performance, not earned by reason of low accessibility, and;

   iv.     Being provided a Quiz with distinct question and section numbers such that he could discern between questions and answer the five questions on his Quiz 1 rather than the four questions that could actually be identified.

280.    As a result of SPC's actions, Plaintiff—solely by reason of his blindness—was excluded from participation in Trig Quiz 1 which is a program, activity, and benefit offered by SPC.

### Inaccessible Notes/Transcription

281.    The format of Instructor MacQuarrie's Trig class includes a lecture component during which Instructor MacQuarrie solves mathematical problems in a visual format through the use of a technological device similar to a document camera/overhead projector (hereinafter, "Livescribe").

282.    Incident to Instructor MacQuarrie's use of Livescribe, Livescribe or its associated peripheral technology saves and stores the mathematical problem-solving step-by-step diagrams written and drawn by Instructor MacQuarrie during each particular Trig class session (hereinafter, "Illustrated Notes").

283.    The Illustrated Notes are a learning aid provided to SPC students in the Trig course.

REMAINDER OF PAGE REMAINS INTENTIONALLY BLANK

284. A true and correct excerpt of Instructor MacQuarrie's Illustrated Notes from Plaintiff's Trig course follow in Plaintiff's Figure 1.



Pl. Figure 1: Excerpt of SPC Instructor MacQuarrie's Illustrated Notes for Trig

285. Instructor MacQuarrie makes the Illustrated Notes available to all sighted College Algebra students via MyCourses on the same day as the notes are provided in class.

286.    The Illustrated Notes are not accessible to Plaintiff solely by reason of his blindness because SPC does not provide any version of the Illustrated Notes' pictorial mathematical operations that effectively communicate the temporal, sequential, and ordered nature of math steps required to achieve the mathematical solution.

287.    The Illustrated Notes are pictorial, visual-only, PDFs that are impossible for Plaintiff to view.

288.    In order to be provided the same Illustrated Notes as sighted students, Plaintiff must have access to more than just words and numbers that are correctly transcribed, but instead must be provided information that effectively communicates the precise notations being used as well as their spatial presence and relationship to one another, all in logical sequential order.

289.    On or about May 31, 2018, Plaintiff inquired of Instructor MacQuarrie, "when you're drawing whatever equation you're working on, the step-by-step process of that…[if] you're on the podium or whatever drawing out step-by-step, so is that available to me?"

290.    Instructor MacQuarrie responded to Plaintiff, stating, in relevant part, "Everything I do in class….so…that's why I try to be as descriptive as possible…"

291.    Plaintiff replied, clarifying that, "since you explain it, that's why for me, I would need a transcribed version of that, I need something I can refer back to and have as students visualize—or have it in front of them to see—and refer back to it" instead of scrolling through 30 minutes of lecture transcription to obtain information that sighted students can access simply by viewing in the Illustrated Notes.

292.    In response, Instructor MacQuarrie said, "Derrek, I explain everything in my lectures. My audio recording lectures are better than any notetaker [at] transcribe section [sic] that someone else can do."

293.     After Instructor MacQuarrie said, "these lectures are your notes," Plaintiff attempted a final time to assist Instructor MacQuarrie in understanding the difference between the ReIllustrated Notes and mere transcribed lecture verbiage, saying, "[the transcripts of the lectures are] audio versions of the whole lecture… if other students were just copying what they saw on the board, would they be allowed to use their notes or would they be limited to only having access to the audio recordings only? They cannot take notes or anything they have to only listen to the audio recordings?"

294.     In conclusion, Instructor MacQuarrie acknowledged that students were taking notes that reflected the Illustrated Notes displayed during MacQuarrie's lectures.

295.     Compounding the issue, SPC employee Kelli Mitchell had previously—on May 18, 2018—advised Plaintiff that, "[SPC is] not going to continue transcribing lectures [because] the instructors are going over problems directly from the textbook, and are providing verbal descriptions of each problem."

296.     On May 31, 2018, Instructor MacQuarrie addressed the discontinuation of Kelli Mitchell's lecture transcription for Plaintiff, stating that transcription was being discontinued "because of the way I'm recording it, because it's already there for you [in an audio PDF file that is printable]."

297.     After noting that Plaintiff would be provided with: (1) audio PDF files (to listen to); (2) transcribed notes of the lectures' words; and (3) the supposedly-accessible Trig Textbook, the conversation continued as follows:

> **Instructor MacQuarrie**:   Just so you know, when I was in college…my teachers…I went to a major engineering university. All my friends are engineers. Ok?  Do you know what calculus, well, this class wasn't even offered [at] my school but, calculus was the intro class, do you know what that was like?

41

**Plaintiff**: Yeah

**Instructor MacQuarrie**: Ok, tell me, what do you think it was like?

**Plaintiff**: I took AP Calc in high school.

**Instructor MacQuarrie**:  High school's not the same as college, tell me what you think…

**Plaintiff**: And then I took Pre-Calculus this semester which I had to drop

**Instructor MacQuarrie**:  This is SPC, this is a tiny school.  Talking about a lecture hall with at least 200 kids in there.  You've got a man down—or a woman usually a man though—just rambling off the section so do you know what we would have to do?  **We had to teach ourselves.  Go to TAs.  Go to tutors.  And read the book on our own.  So what I'm providing to you, is accessible**.  It is…you got the textbook, you got people transcribing the book for you, you've got my lectures that I write down every single detail I describe everything I'm doing.  So if someone didn't want to look at it, like say someone else didn't want to look at it and just listen to it, they could figure it out too.  (emphasis added).

**Plaintiff**:  Ok.

**Instructor MacQuarrie**:  Ok?

298.    In an attempt to intimidate and convince Plaintiff that the Trig Course materials were in fact accessible, Instructor MacQuarrie—a sighted individual—leveraged her position of authority as Plaintiff's instructor and her academic credentials to draw a wholly-illogical and unsupported correlation between her 'teaching herself' at a "major engineering university" and the purportedly-accessible materials provided by SPC.

299.    As a result of SPC's actions, Plaintiff—solely by reason of his blindness—was excluded from participation in the Illustrated Notes provided within Trig course, which is a program, activity, and benefit offered by SPC.

**Alternative Trig Materials**

300.    SPC attempted to provide alternative Trig learning materials to Plaintiff in the form of "section summaries" and transcribed notes of class lectures, and transcribed quizzes.

301.    Any alternative Trig course learning materials provided to Plaintiff are unequal as they contain different content than the content provided to sighted students.

302.    Any alternative Trig course learning materials provided to Plaintiff are unequal and inaccessible because they—among other issues—lack question numbers, include tables unreadable by a screen reader, do not distinguish adequately between questions in ways discernable by a blind student, emphasize text with bolding or other indicators meant only for sighted students, and include answers without providing correlating question numbers which are provided to the class.

303.    SPC did not provide any "Sighted Math Person" to assist Plaintiff during the Trig class.

**MML**

304.    Upon information and belief, SPC does provide MML to its students for educational use in the Trig course.

305.    On its bookstore website, alongside the required Trig Textbook, SPC lists MML as "recommended" for the Trig Course and provides a means for students to purchase the same for $113.35.

306.    Generally, MML aids students in Trig through the use of adaptive technology that can focus teaching content based upon the type of questions a user correctly or incorrectly answers.

307.    MML provides the user with immediate feedback, alternative questions, and a "help" feature.

43

308.    Plaintiff was informed by students in his Trig course that MML and its accompanying educational tools and features are available for educational use in the Trig course.

309.    In fact, during July 2018, SPC inadvertently provided Plaintiff full access to MML's educational tools and features for the Trig course when SPC attempted to re-provide an accessible link to the HTML version of the Trig Textbook.

310.    After Plaintiff raised the issue to SPC that MML and its tools and features were displayed when he logged into MML to access the Trig Textbook, SPC manipulated changeable MML settings to prohibit MML from displaying its educational content to Plaintiff.

311.    At all times thereafter, any time Plaintiff accessed MML to obtain the link to the HTML version of the Trig Textbook, only the link to the HTML Trig Textbook was displayed.

312.    Regardless of whether MML is required for the Trig course, MML is provided by SPC to sighted students in the Trig course.

313.    Since at least prior to November 8, 2017, SPC knew that MML was inaccessible to a blind user.[2]

314.    MML was not accessible to Plaintiff solely due to his blindness.

315.    MML does not comply with WCAG 2.0.

316.    No equivalent alternative to MML—containing the benefits and features of MML—was provided to the Plaintiff by SPC.

317.    As a result of SPC's actions, Plaintiff was—solely by reason of his blindness—excluded from participation in the MML, a program, activity, and benefit offered by SPC.

_____

[2] Via a November 8, 2018 e-mail, SPC acknowledged that MML was not accessible through its attempt to place Plaintiff in College Algebra Course Sections that did not use MML.

## CHEM 1025

318. During the Fall Term 2018-2019, Plaintiff is enrolled in SPC's course titled, "CHM 1025 Introductory Chemistry" (hereinafter, "Chem").

319. On or about August 9, 2018, Plaintiff was notified that he qualified for multiple accommodations to be provided for the Chem course via an email titled "[AS Jon Jenkins – [student ID number ending in 3621] – CHM 1025.34 – INTRODUCTORY CHEMISTRY (CRN: 2167) – Notification of Academic Support Services Fall 2018" (hereinafter, Chem Accommodations Notice").

320. Plaintiff's accommodations for Chem included, but were not limited to: (1) Adaptive Technology (including alternative media); and (2) the ability to digitally record learning situations.

321. In addition, Plaintiff was noted as "Blind" under the "additional Notification(s) Regarding Student" section of the Chem Accommodations Notice.

322. SPC professor Richard P. Musgrave teaches the Chem course in which Plaintiff is enrolled.

323. A copy of the Chem Accommodations Notice was sent to, or made available to, SPC Instructor Musgrave.

324. SPC possessed knowledge over Musgrave's syllabus for Chem and did not disapprove of it.

### Inaccessible Chem Textbook and Periodic Table

325. SPC's Chem class requires a textbook published by Cengage Learning (i.e., "Introductory Chemistry: A Foundation," ISBN: 9781337399425 (hereinafter, "Chem Textbook").

326.    SPC's Chem class requires a periodic table published by Sargent Welch (i.e., "Ward's Comprehensive Periodic Table") (hereinafter, "Periodic Table").

327.    Prior to the beginning of the Fall 2018 semester, Plaintiff purchased the digital version of the Chem Textbook and Periodic Table through SPC.

328.    The Chem Textbook is not fully accessible.

329.    The Periodic Table is not fully accessible.

330.    The Chem Textbook and Periodic Table are essential to achieving any measure of academic success in the Chem course.

331.    Without access to the Chem Textbook and Periodic Table, a student's chances of success in the Chem course decrease dramatically.

332.    As a result of SPC's actions, Plaintiff was—solely by reason of his blindness—excluded from participation in the Chem Textbook and Periodic Table, a program, activity, and benefit offered by SPC.

**Inaccessible Chemistry Modules**

333.    Incident to the Chem course, SPC posts items called "modules" on the Chem course's MyCourses page (hereinafter, "Chem Modules").

334.    Chem Modules may contain video, printed PDF documents, and/or links to third-party (non-SPC) websites.

335.    The Chem Modules were made available, as an educational tool, to the sighted Chem students in Plaintiff's course.

336.    The Chem Modules are inaccessible for Plaintiff due to their visual nature.

337.    Neither the Chem Modules nor their delivery means comply with WCAG 2.0.

338.    Plaintiff was never provided an accessible format of the Chem Modules.

339.    The Chem Modules contain inaccessible PDFs that are not readable by a screen reader.

340.    The Chem Modules contain links to third-party websites that are not accessible to Plaintiff.

341.    Links within the Chem Modules are not accessible to Plaintiff because they are not readable by a screen reader.

342.    As a result of SPC's actions, Plaintiff was and is—solely by reason of his blindness—excluded from participation in the Chem Modules, a program, activity, and benefit offered by SPC.

## **CHEM 1025L**

343.    During the Fall Term 2018-2019, Plaintiff is enrolled in SPC's course titled, "CHM 1025L Introductory Chemistry Lab" (hereinafter, "Chem Lab").

344.    On or about August 8, 2018, Plaintiff was notified that he qualified for multiple accommodations to be provided for the Chem Lab course via an email titled "[AS Jon Jenkins – [student ID number ending in 3621] – CHM 1025L.57 – INTRODUCTORY CHEMISTRY LAB (CRN: 2366) – Notification of Academic Support Services Fall 2018" (hereinafter, Chem Lab Accommodations Notice").

345.    Plaintiff's accommodations for Chem Lab included, but were not limited to: (1) Adaptive Technology (including alternative media); and (2) the ability to digitally record learning situations.

346.    In addition, Plaintiff was noted as "Blind" under the "additional Notification(s) Regarding Student" section of the Chem Lab Accommodations Notice.

47

347.   SPC professor Timothy Backus teaches the Chem Lab course in which Plaintiff is enrolled.

348.   A copy of the Chem Lab Accommodations Notice was sent to, or made available to, SPC Instructor Backus.

349.   SPC possessed knowledge over Backus's syllabus for Chem Lab and did not disapprove of it.

### Inaccessible Chem Lab Assignments

350.   As a part of Chem Lab, Plaintiff is required to complete pre and post-lab assignments (hereinafter, Chem Lab Assignments").

351.   The Chem Lab Assignments are not provided to Plaintiff in an accessible means compatible with a screen-reader.

352.   The Chem Lab Assignments, to the extent they are ever provided to Plaintiff, are not provided to Plaintiff so that Plaintiff has enough time to timely complete and submit the same.

353.   As a result of SPC's actions, Plaintiff was and is—solely by reason of his blindness—excluded from participation in the Chem Lab Assignments, a program, activity, and benefit offered by SPC.

### Inaccessible Chem Lab Handout

354.   As a part of Chem Lab, all students in the Chem Lab course were provided a large packet of documents that were described as all lab assignments in printed form in the sequence in which they were to be completed throughout the semester (hereinafter, "Chem Lab Handout").

355.   When Plaintiff asked what documents comprised Chem Lab Handout, the instructor told him that the Chem Lab Handout was comprised of the individual class lab assignments and each were separately accessible via MyCourses.

356.     When Plaintiff requested an accessible copy of the Chem Lab Handout, the instructor replied that Plaintiff has access to the Chem Lab Handout in the same manner as other students.

357.     While the constituent lab assignment documents were available to Plaintiff via MyCourses, Plaintiff was required to undertake additional work to assemble the Chem Lab Handout—work that sighted students were not required to undertake.

358.     For example, Plaintiff was required to access MyCourses, identify the constituent documents (which already takes additional time due to Plaintiff's necessary reliance on audio), place the documents in the correct sequence, and merge the documents into one digital packet.

359.     Rather than simply providing an accessible version of the exact Chem Lab Handout to the Plaintiff, SPC instead chose to provide only the constituent parts then force the Plaintiff to incur time and labor assembling a new document, solely due to his disability.

360.     As a result of SPC's actions, Plaintiff was and is—solely by reason of his blindness—excluded from participation in the Chem Lab Handout, a program, activity, and benefit offered by SPC.

**Inaccessible Chem Lab Curriculum**

361.     In Chem Lab, students are paired with a lab partner in order to complete interactive, experiment-based problem solving and learning.

362.     Plaintiff was paired with a lab partner.

363.     With his lab partner, Plaintiff is expected—like all other Chem Lab students—to complete the Chem Lab curriculum.

364.     The Chem Lab curriculum consists of, but is not limited to, taking measurements, reading instruments, creating and monitoring solutions, and solving chemistry problems.

365. While signed Chem Lab students can take measurements, read instruments, create and monitor solutions, take notes, and solve chemistry problems independently within the lab pairing, Defendant does not permit the Plaintiff to do so.

366. For example, Defendant provides no means by which Plaintiff can independently take measurements, read instruments, take notes, or complete many manual tasks.

367. Instead of providing instruments and curriculum that is accessible for a blind user such as Plaintiff, Defendant instead assigned a federal work-study student to mind (hereinafter "Minder") the Plaintiff during Chem Lab.

368. Defendant instructed the Minder to read temperatures on instruments aloud to Plaintiff.

369. Defendant instructed the Minder to read measurements aloud to Plaintiff.

370. Defendant instructed the Minder to do lab tasks that are both manual and non-manual in nature.

371. Defendant instructed the Minder to provide class notes to Plaintiff.

372. Whereas all other Chem Lab students may independently function within their respective lab pairings, Plaintiff is required to rely (and Defendant insists that Plaintiff rely) on a sighted Minder to achieve even mild access to the Chem Lab curriculum.

373. Any class notes provided to Plaintiff from the Minder are not provided in any timely manner to allow Plaintiff to complete his Chem Lab assignments.

374. The Chem Lab Curriculum is made available, as an educational tool, to the sighted Chem Lab students in Plaintiff's course.

375.    As a result of SPC's actions, Plaintiff was and is—solely by reason of his blindness—excluded from participation in the Chem Lab curriculum, a program, activity, and benefit offered by SPC.

## MAC 1140 PRE-CALCULUS

376.    During the Fall Term 2018-2019, Plaintiff is enrolled in SPC's course titled, "MAC 1140 Pre-Calculus Algebra" (hereinafter, "Pre-Calc").

377.    On or about August 9, 2018, Plaintiff was notified that he qualified for multiple accommodations to be provided for the Pre-Calc course via an email titled "[AS Jon Jenkins – [student ID number ending in 3621] – MAC 1140.17 – PRE-CALCULUS (CRN: 817) – Notification of Academic Support Services Fall 2018" (hereinafter, Pre-Calc Accommodations Notice").

378.    Plaintiff's accommodations for Pre-Calc included, but were not limited to: (1) Adaptive Technology (including alternative media); and (2) the ability to digitally record learning situations.

379.    In addition, Plaintiff was noted as "Blind" under the "additional Notification(s) Regarding Student" section of the Pre-Calc Accommodations Notice.

380.    SPC professor Sherry Wagner teaches the Pre-Calc course in which Plaintiff is enrolled.

381.    A copy of the Pre-Calc Accommodations Notice was sent to, or made available to, SPC Instructor Wagner.

382.    SPC possessed knowledge over Wagner's syllabus for Pre-Calc and did not disapprove of it.

### Inaccessible Pre-Calc Modules

383. Incident to the Pre-Calc course, SPC posts items called "modules" on the Pre-Calc course's MyCourses page (hereinafter, "Pre-Calc Modules").

384. Pre-Calc Modules contain video.

385. The Pre-Calc Modules are made available, as an educational tool, to the sighted Pre-Calc students in Plaintiff's course.

386. The Pre-Calc Modules—including but not limited to Module 1 which contains 15 videos—are inaccessible for Plaintiff due to the Module's visual nature.

387. Neither the Pre-Calc Modules nor their delivery means comply with WCAG 2.0.

388. Plaintiff has never been provided an accessible format of the Pre-Calc Modules.

389. As a result of SPC's actions, Plaintiff is—solely by reason of his blindness—excluded from participation in the Pre-Calc Modules, a program, activity, and benefit offered by SPC.

## Inaccessible Notes

390. The format of Instructor Wagner's Pre-Calc class includes a lecture component during which Instructor Wagner solves mathematical problems in a visual format through the use of an overhead projector (hereinafter, "Overhead").

391. Plaintiff, as a part of the class lecture, has heard the instructor reference mathematical operations displayed "on the overhead."

392. Plaintiff has also confirmed that the quiz assignments are reflective of what is described as shown during lecture on the Overhead.

393. Incident to Instructor Wagner's use the Overhead creates the mathematical problem-solving step-by-step diagrams written and drawn by Instructor Wagner during each particular Pre-Calc class session (hereinafter, "Illustrated Notes").

394.    Though in-class use of the Overhead, Instructor Wagner makes the Illustrated Notes available to all sighted Pre-Calc students.

395.    The Illustrated Notes are not accessible to Plaintiff solely by reason of his blindness because SPC does not provide any version of the Illustrated Notes' pictorial mathematical operations that effectively communicate the temporal, sequential, and ordered nature of math steps required to achieve the mathematical solution.

396.    The Illustrated Notes are pictorial, visual-only, and are impossible for Plaintiff to view.

397.    In order to be provided the same Illustrated Notes as sighted students, Plaintiff must have access to more than just words and numbers that are correctly transcribed, but instead must be provided information that effectively communicates the precise notations being used as well as their spatial presence and relationship to one another, all in logical sequential order.

398.    Defendants do not provide a notetaker for Plaintiff in the Pre-Calc course.

399.    As a result of SPC's actions, Plaintiff—solely by reason of his blindness—is excluded from participation in the Illustrated Notes provided within Pre-Calc course, which is a program, activity, and benefit offered by SPC.

**Inaccessible Test 2**

400.     During the week of September 24, 2018, Instructor Wagner distributed a printed in-class test (hereinafter, "Test 2").

401.    Test 2 was described by Instructor Wagner as a "take-home test."

402.    Plaintiff was not provided an accessible version of Test 2.

403.    Instead, Plaintiff was told that if he worked with a partner, he could complete Test 2.

404.     Plaintiff could not adequately complete Test 2 independently.

405.     As a result of SPC's actions, Plaintiff—solely by reason of his blindness—was excluded from participation in Test 2 provided within Pre-Calc course, which is a program, activity, and benefit offered by SPC.

**COUNT ONE:**
**VIOLATION OF 42 U.S.C. § 12132**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(COMP II COURSE)**

406.     Plaintiff re-alleges paragraphs 1-12, 24-89, and 98-149 as if fully restated herein and further states as follows.

407.     Defendant is subject to, and has violated the provisions of 42 U.S.C. § 12132 by excluding Plaintiff—on the basis of his disability—from participation or denying Plaintiff the benefits of the services, programs, or activities of SPC, a public entity.

408.     Defendant has discriminated against the Plaintiff by reason of his disability.

409.     Plaintiff, due to his disability, has been excluded from the Worksheet Article offered in SPC's Comp II course.

410.     Plaintiff, due to his disability, has been excluded from the Extra Credit Opportunity offered in SPC's Comp II course.

411.     Plaintiff, due to his disability, has been excluded from the Written Assignment Feedback offered in SPC's Comp II course.

412.     Plaintiff, due to his disability, has been excluded from the Peer Feedback Activity offered in SPC's Comp II course.

413.     Plaintiff, due to his disability, has been excluded from the InQuizitive Program offered in SPC's Comp II course.

414.    Defendant failed to take appropriate steps to ensure that communications to the Plaintiff within the Comp II course were as effective as communications with others.

415.    Defendant failed to furnish appropriate auxiliary aids and services to afford the Plaintiff an equal opportunity to participate in the Comp II course.

416.    SPC provided Plaintiff a grade in the Comp II class however the grade did not reflect Plaintiff's completion of the Comp II course's curriculum because Plaintiff was excluded and never provided with the Comp II course's actual curriculum.

417.    As a result of Defendant's actions, Plaintiff—solely by reason of his blindness— was excluded from participation in the Comp II course, which is a program, activity, and benefit offered by SPC.

### COUNT TWO:
### VIOLATION OF 42 U.S.C. § 12132
### DECLARATORY AND INJUNCTIVE RELIEF
### (COLLEGE ALGEBRA COURSE)

418.    Plaintiff re-alleges paragraphs 1-12, 24-89, and 150-203 as if fully restated herein and further states as follows.

419.    Defendant is subject to, and has violated the provisions of 42 U.S.C. § 12132 by excluding Plaintiff—on the basis of his disability—from participation or denying Plaintiff the benefits of the services, programs, or activities of SPC, a public entity.

420.    Plaintiff, due to his disability, has been excluded from participation in MML offered in SPC's College Algebra course.

421.    Plaintiff, due to his disability, has been excluded from participation in obtaining College Algebra notes from class sessions offered in SPC's College Algebra course.

422.    Plaintiff, due to his disability, has been excluded from participation in SPC's full College Algebra curriculum offered by SPC.

423.    Plaintiff, due to his disability, has been excluded from participation in the textbook for College Algebra offered in SPC's College Algebra course.

424.    Plaintiff, due to his disability, has been excluded from participation in the College Algebra Videos offered by SPC.

425.    Defendant failed to take appropriate steps to ensure that communications to the Plaintiff within the College Algebra course were as effective as communications with others.

426.    Defendant failed to furnish appropriate auxiliary aids and services to afford the Plaintiff an equal opportunity to participate in the College Algebra course.

427.    SPC provided Plaintiff a grade in the College Algebra course however the grade did not reflect Plaintiff's completion of the College Algebra course's curriculum because Plaintiff was excluded and never provided with the College Algebra course's actual curriculum.

428.    As a result of Defendant's actions, Plaintiff—solely by reason of his blindness—was excluded from participation in the College Algebra course, which is a program, activity, and benefit offered by SPC.

## COUNT THREE:
## VIOLATION OF 42 U.S.C. § 12132
## DECLARATORY AND INJUNCTIVE RELIEF
## (BASIC COMPUTER COURSE)

429.    Plaintiff re-alleges paragraphs 1-12, 24-89, and 204-224 as if fully restated herein and further states as follows.

430.    Defendant is subject to, and has violated the provisions of 42 U.S.C. § 12132 by excluding Plaintiff—on the basis of his disability—from participation or denying Plaintiff the benefits of the services, programs, or activities of SPC, a public entity.

431.    Plaintiff, due to his disability, has been excluded from participation in the Remote Learning System offered in SPC's Basic Computer course.

432.    Defendant failed to take appropriate steps to ensure that communications to the Plaintiff within the Basic Computer course were as effective as communications with others.

433.    Defendant failed to furnish appropriate auxiliary aids and services to afford the Plaintiff an equal opportunity to participate in the Basic Computer course.

434.    SPC provided Plaintiff no grade in the Basic Computer course because Plaintiff was excluded and never provided with the Basic Computer course's actual curriculum.

435.    As a result of Defendants actions, Plaintiff—solely by reason of his blindness—was excluded from participation in the Basic Computer course, which is a program, activity, and benefit offered by SPC.

**COUNT FOUR:**
**VIOLATION OF 42 U.S.C. § 12132**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(TRIG COURSE)**

436.    Plaintiff re-alleges paragraphs 1-12, 24-89, and 225-317 as if fully restated herein and further states as follows.

437.    Defendant is subject to, and has violated the provisions of 42 U.S.C. § 12132 by excluding Plaintiff—on the basis of his disability—from participation or denying Plaintiff the benefits of the services, programs, or activities of SPC, a public entity.

438.    Plaintiff, due to his disability, has been excluded from participation in the Trig Textbook, Trig assignments, Trig quizzes, Trig readings, and Trig learning opportunities offered in SPC's Trig course.

439.    Plaintiff, due to his disability, has been excluded from participation in Illustrated Notes offered in SPC's Trig course.

440.    Defendant failed to take appropriate steps to ensure that communications to the Plaintiff within the Trig course were as effective as communications with others.

441.   Defendant failed to furnish appropriate auxiliary aids and services to afford the Plaintiff an equal opportunity to participate in the Trig course.

442.   SPC provided Plaintiff a grade in the Trig course however the grade did not reflect Plaintiff's completion of the Trig course's curriculum because Plaintiff was excluded and never provided with the Trig course's actual curriculum.

443.   As a result of Defendant's actions, Plaintiff—solely by reason of his blindness—was excluded from participation in the Trig course, which is a program, activity, and benefit offered by SPC.

**COUNT FIVE:**
**VIOLATION OF 42 U.S.C. § 12132**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(CHEM COURSE)**

444.   Plaintiff re-alleges paragraphs 1-12, 24-89, and 318-342 as if fully restated herein and further states as follows.

445.   Defendant is subject to, and has violated the provisions of 42 U.S.C. § 12132 by excluding Plaintiff—on the basis of his disability—from participation or denying Plaintiff the benefits of the services, programs, or activities of SPC, a public entity.

446.   Plaintiff, due to his disability, has been excluded from participation in the Chem Textbook, Chem assignments, Chem quizzes, Chem readings, and Chem learning opportunities offered in SPC's Chem course.

447.   Defendant failed to take appropriate steps to ensure that communications to the Plaintiff within the Chem course were as effective as communications with others.

448.   Defendant failed to furnish appropriate auxiliary aids and services to afford the Plaintiff an equal opportunity to participate in the Chem course.

449.    As of this Complaint, Plaintiff is attempting to complete the Chem course however any grade provided by SPC will not reflect Plaintiff's completion of the Chem course's curriculum because Plaintiff was excluded and never provided with the Chem course's actual curriculum.

450.    As a result of Defendant's actions, Plaintiff—solely by reason of his blindness—was excluded from participation in the Chem course, which is a program, activity, and benefit offered by SPC.

**COUNT SIX:**
**VIOLATION OF 42 U.S.C. § 12132**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(CHEM LAB COURSE)**

451.    Plaintiff re-alleges paragraphs 1-12, 24-89, and 343-375 as if fully restated herein and further states as follows.

452.    Defendant is subject to, and has violated the provisions of 42 U.S.C. § 12132 by excluding Plaintiff—on the basis of his disability—from participation or denying Plaintiff the benefits of the services, programs, or activities of SPC, a public entity.

453.    Plaintiff, due to his disability, has been excluded from participation in the Chem Lab Textbook, Chem Lab assignments, Chem Lab quizzes, Chem Lab readings, Chem Lab Handout, and Chem Lab learning opportunities offered in SPC's Chem Lab course.

454.    Defendant failed to take appropriate steps to ensure that communications to the Plaintiff within the Chem Lab course were as effective as communications with others.

455.    Defendant failed to furnish appropriate auxiliary aids and services to afford the Plaintiff an equal opportunity to participate in the Chem Lab course.

456.    As of this Complaint, Plaintiff is attempting to complete the Chem Lab course however any grade provided by SPC will not reflect Plaintiff's completion of the Chem Lab

course's curriculum because Plaintiff was excluded and never provided with the Chem Lab course's actual curriculum.

457.    As a result of Defendant's actions, Plaintiff—solely by reason of his blindness— was excluded from participation in the Chem Lab course, which is a program, activity, and benefit offered by SPC.

### COUNT SEVEN:
### VIOLATION OF 42 U.S.C. § 12132
### DECLARATORY AND INJUNCTIVE RELIEF
### (PRE-CALC)

458.    Plaintiff re-alleges paragraphs 1-12, 24-89, and 376-405 as if fully restated herein and further states as follows.

459.    Defendant is subject to, and has violated the provisions of 42 U.S.C. § 12132 by excluding Plaintiff—on the basis of his disability—from participation or denying Plaintiff the benefits of the services, programs, or activities of SPC, a public entity.

460.    Plaintiff, due to his disability, has been excluded from participation in the Pre-Calc Textbook, Pre-Calc assignments, Pre-Calc quizzes, Pre-Calc readings, Illustrated Notes, Test 2, and Pre-Calc learning opportunities offered in SPC's Pre-Calc course.

461.    Defendant failed to take appropriate steps to ensure that communications to the Plaintiff within the Pre-Calc course were as effective as communications with others.

462.    Defendant failed to furnish appropriate auxiliary aids and services to afford the Plaintiff an equal opportunity to participate in the Pre-Calc course.

463.    As of this Complaint, Plaintiff is attempting to complete the Pre-Calc course however any grade provided by SPC will not reflect Plaintiff's completion of the Pre-Calc course's curriculum because Plaintiff was excluded and never provided with the Pre-Calc course's actual curriculum.

464.    As a result of Defendant's actions, Plaintiff—solely by reason of his blindness—was excluded from participation in the Pre-Calc course, which is a program, activity, and benefit offered by SPC.

**COUNT EIGHT:**
**VIOLATION OF 42 U.S.C. § 12132**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(ENGINEERING CURRICULUM)**

465.    Plaintiff re-alleges paragraphs 1-12, 24-89, and 98-405 as if fully restated herein and further states as follows.

466.    Defendant is subject to, and has violated the provisions of 42 U.S.C. § 12132 by excluding Plaintiff—on the basis of his disability—from participation or denying Plaintiff the benefits of the services, programs, or activities of SPC, a public entity.

467.    Plaintiff, due to his disability, has been excluded from participation in the curriculum required to complete his engineering associate in science degree.

468.    Plaintiff, due solely to his disability, has been excluded from participation in the Comp II Course, College Algebra Course, Trig Course, Chem Course, Chem Lab Course, and Pre-Calc Court (hereinafter, "Engineering Curriculum"), each of which are requirements for completion of his degree at SPC.

469.    Defendant failed to take appropriate steps to ensure that communications to the Plaintiff within the Engineering Curriculum were as effective as communications with others.

470.    Defendant failed to furnish appropriate auxiliary aids and services to afford the Plaintiff an equal opportunity to participate in the Engineering Curriculum.

471.    SPC's exclusion of Plaintiff from the Engineering Curriculum and MyCourses negatively impacts Plaintiff's ability to complete his degree program at SPC.

472.    As a result of Defendant's actions, Plaintiff—solely by reason of his blindness—was excluded from participation in the Engineering Curriculum, which is a program, activity, and benefit offered by SPC.

### COUNT NINE:
### VIOLATION OF 29 U.S.C. § 794(a)
### DECLARATORY AND INJUNCTIVE RELIEF
### (MYCOURSES)

473.    Plaintiff re-alleges paragraphs 1 and 13-97 as if fully restated herein and further states as follows.

474.    Defendant is subject to, and has violated the provisions of 29 U.S.C. § 794(a) by excluding Plaintiff—on the basis of his disability—from participation or denying Plaintiff the benefits of the programs or activities of SPC, a public entity.

475.    SPC utilizes, and provides to its students, including the Plaintiff, a website it has named "MyCourses."

476.    MyCourses is a learning management system ("LMS") that runs on a software or program called "Canvas" that is distributed by Instructure.

477.    SPC's MyCourses system, which utilizes Canvas, is inaccessible to the Plaintiff and does not comply with WCAG 2.0.

478.    MyCourse's inaccessibility includes, but is not limited to, missing alternative text, inaccessible links, upload areas, calendar features, and inaccessible navigation.

479.    MyCourse's platform system, Canvas is, by Instructure's own admission, not fully compliant with WCAG 2.0.

480.    SPC has never provided the Plaintiff with an accessible format of MyCourses.

481.    As a result of Defendant's actions, Plaintiff was—solely by reason of his blindness—excluded from participation in MyCourses, which is a program or activity SPC.

**COUNT TEN:**
**VIOLATION OF 29 U.S.C. § 794(a)**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(COMP II)**

482.    Plaintiff re-alleges paragraphs 1, 13-89, and 98-149 as if fully restated herein and further states as follows.

483.    Defendant is subject to, and has violated the provisions of 29 U.S.C. § 794(a) by excluding Plaintiff—on the basis of his disability—from participation or denying Plaintiff the benefits of the programs or activities of SPC, a public entity.

484.    Plaintiff, due to his disability, has been excluded from the Worksheet Article offered in SPC's Comp II course.

485.    Plaintiff, due to his disability, has been excluded from the Extra Credit Opportunity offered in SPC's Comp II course.

486.    Plaintiff, due to his disability, has been excluded from the Written Assignment Feedback offered in SPC's Comp II course.

487.    Plaintiff, due to his disability, has been excluded from the Peer Feedback Activity offered in SPC's Comp II course.

488.    Plaintiff, due to his disability, has been excluded from the InQuizitive Program offered in SPC's Comp II course.

489.    SPC provided Plaintiff a grade in the Comp II class however the grade did not reflect Plaintiff's completion of the Comp II course's curriculum because Plaintiff was excluded and never provided with the Comp II course's actual curriculum.

490.    As a result of Defendant's actions, Plaintiff—solely by reason of his blindness— was excluded from participation in the Comp II course, which is a program of activity offered by SPC.

**COUNT ELEVEN:**
**VIOLATION OF 29 U.S.C. § 794(a)**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(COLLEGE ALGEBRA)**

491.    Plaintiff re-alleges paragraphs 1, 13-89, and 150-203 as if fully restated herein and further states as follows.

492.    Defendant is subject to, and has violated the provisions of 29 U.S.C. § 794(a) by excluding Plaintiff—on the basis of his disability—from participation or denying Plaintiff the benefits of the programs or activities of SPC, a public entity.

493.    Plaintiff, due to his disability, has been excluded from participation in MML offered in SPC's College Algebra course.

494.    Plaintiff, due to his disability, has been excluded from participation in obtaining College Algebra notes from class sessions offered in SPC's College Algebra course.

495.    Plaintiff, due to his disability, has been excluded from participation in SPC's full College Algebra curriculum offered by SPC.

496.    Plaintiff, due to his disability, has been excluded from participation in the textbook for College Algebra offered in SPC's College Algebra course.

497.    Plaintiff, due to his disability, has been excluded from participation in the College Algebra Videos offered by SPC.

498.    SPC provided Plaintiff a grade in the College Algebra course however the grade did not reflect Plaintiff's completion of the College Algebra course's curriculum because Plaintiff was excluded and never provided with the College Algebra course's actual curriculum.

499.    As a result of Defendants actions, Plaintiff—solely by reason of his blindness—was excluded from participation in the College Algebra course, which is a program or activity offered by SPC.

**COUNT TWELVE:**
**VIOLATION OF 29 U.S.C. § 794(a)**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(BASIC COMPUTER)**

500.    Plaintiff re-alleges paragraphs 1, 13-89, and 204-224 as if fully restated herein and further states as follows.

501.    Defendant is subject to, and has violated the provisions of 29 U.S.C. § 794(a) by excluding Plaintiff—on the basis of his disability—from participation or denying Plaintiff the benefits of the programs or activities of SPC, a public entity.

502.    Plaintiff, due to his disability, has been excluded from participation in the Remote Learning System offered in SPC's Basic Computer course.

503.    SPC provided Plaintiff no grade in the Basic Computer course because Plaintiff was excluded and never provided with the Basic Computer course's actual curriculum.

504.    As a result of Defendants actions, Plaintiff—solely by reason of his blindness— was excluded from participation in the Basic Computer course, which is a program or activity offered by SPC.

**COUNT THIRTEEN:**
**VIOLATION OF 29 U.S.C. § 794(a)**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(TRIG)**

505.    Plaintiff re-alleges paragraphs 1, 13-89, and 225-317 as if fully restated herein and further states as follows.

506.    Defendant is subject to, and has violated the provisions of 29 U.S.C. § 794(a) by excluding Plaintiff—on the basis of his disability—from participation or denying Plaintiff the benefits of the programs or activities of SPC, a public entity.

507.     Plaintiff, due to his disability, has been excluded from participation in the Trig Textbook, Trig assignments, Trig quizzes, Trig readings, MML, and Trig learning opportunities offered in SPC's Trig course.

508.     Plaintiff, due to his disability, has been excluded from participation in Illustrated Notes offered in SPC's Trig course.

509.     SPC provided Plaintiff a grade in the Trig course however the grade did not reflect Plaintiff's completion of the Trig course's curriculum because Plaintiff was excluded and never provided with the Trig course's actual curriculum.

510.     As a result of Defendant's actions, Plaintiff—solely by reason of his blindness— was excluded from participation in the Trig course, which is a program or activity offered by SPC. 29 U.S.C. § 794(a).

**COUNT FOURTEEN:**
**VIOLATION OF 29 U.S.C. § 794(a)**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(CHEM COURSE)**

511.     Plaintiff re-alleges paragraphs 1, 13-89, and 318-342 as if fully restated herein and further states as follows.

512.     Defendant is subject to, and has violated the provisions of 29 U.S.C. § 794(a) by excluding Plaintiff—on the basis of his disability—from participation or denying Plaintiff the benefits of the programs or activities of SPC, a public entity.

513.     Plaintiff, due to his disability, has been excluded from participation in the Chem Textbook, Chem assignments, Chem quizzes, Chem readings, and Chem learning opportunities offered in SPC's Chem course.

514.     As of this Complaint, Plaintiff is attempting to complete the Chem course however any grade provided by SPC will not reflect Plaintiff's completion of the Chem course's curriculum because Plaintiff was excluded and never provided with the Chem course's actual curriculum.

515.     As a result of Defendant's actions, Plaintiff—solely by reason of his blindness—is being excluded from participation in the Chem course, which is a program or activity offered by SPC. 29 U.S.C. § 794(a).

### COUNT FIFTEEN:
### VIOLATION OF 29 U.S.C. § 794(a)
### DECLARATORY AND INJUNCTIVE RELIEF
### (CHEM LAB)

516.     Plaintiff re-alleges paragraphs 1, 13-89, and 343-375 as if fully restated herein and further states as follows.

517.     Defendant is subject to, and has violated the provisions of 29 U.S.C. § 794(a) by excluding Plaintiff—on the basis of his disability—from participation or denying Plaintiff the benefits of the programs or activities of SPC, a public entity.

518.     Plaintiff, due to his disability, has been excluded from participation in the Chem Lab Textbook, Chem Lab assignments, Chem Lab quizzes, Chem Lab readings, Chem Lab Handout, and Chem Lab learning opportunities offered in SPC's Chem Lab course.

519.     As of this Complaint, Plaintiff is attempting to complete the Chem Lab course however any grade provided by SPC will not reflect Plaintiff's completion of the Chem Lab course's curriculum because Plaintiff was excluded and never provided with the Chem Lab course's actual curriculum.

520.     As a result of Defendant's actions, Plaintiff—solely by reason of his blindness—is being excluded from participation in the Chem Lab course, which is a program or activity offered by SPC. 29 U.S.C. § 794(a).

67

## COUNT SIXTEEN:
## VIOLATION OF 29 U.S.C. § 794(a)
## DECLARATORY AND INJUNCTIVE RELIEF
## (PRE-CALC)

521.     Plaintiff re-alleges paragraphs 1, 13-89, and 376-405 as if fully restated herein and further states as follows.

522.     Defendant is subject to, and has violated the provisions of 29 U.S.C. § 794(a) by excluding Plaintiff—on the basis of his disability—from participation or denying Plaintiff the benefits of the programs or activities of SPC, a public entity.

523.     Plaintiff, due to his disability, has been excluded from participation in the Pre-Calc Textbook, Pre-Calc assignments, Pre-Calc quizzes, Pre-Calc readings, Illustrated Notes, Test 2, and Pre-Calc learning opportunities offered in SPC's Pre-Calc course.

524.     As of this Complaint, Plaintiff is attempting to complete the Pre-Calc course however any grade provided by SPC will not reflect Plaintiff's completion of the Pre-Calc course's curriculum because Plaintiff was excluded and never provided with the Pre-Calc course's actual curriculum.

525.     As a result of Defendant's actions, Plaintiff—solely by reason of his blindness—is being excluded from participation in the Pre-Calc course, which is a program or activity offered by SPC. 29 U.S.C. § 794(a).

## COUNT SEVENTEEN:
## VIOLATION OF 29 U.S.C. § 794(a)
## DECLARATORY AND INJUNCTIVE RELIEF
## (ENGINEERING CURRICULUM)

526.     Plaintiff re-alleges paragraphs 1, 13-89, and 98-405 as if fully restated herein and further states as follows.

527.    Defendant is subject to, and has violated the provisions of 29 U.S.C. § 794(a) by excluding Plaintiff—on the basis of his disability—from participation or denying Plaintiff the benefits of the programs or activities of SPC, a public entity.

528.    Plaintiff, due to his disability, has been excluded from participation in the curriculum required to complete his engineering associate in science degree.

529.    Plaintiff, due solely to his disability, has been excluded from participation in the Comp II Course, College Algebra Course, Trig Course (hereinafter, "Engineering Curriculum"), and MyCourses, each of which are requirements for completion of his degree at SPC.

530.    SPC's exclusion of Plaintiff from the Engineering Curriculum and MyCourses negatively impacts Plaintiff's ability to complete his degree program at SPC.

531.    As a result of Defendant's actions, Plaintiff—solely by reason of his blindness—was excluded from participation in the Engineering Curriculum, which is a program or activity offered by SPC.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendant's actions and conduct, Plaintiff respectfully requests this Court enter judgment:

a.    Declaring that Defendant's Comp II, College Algebra, Basic Computer, Trig, Chemistry, Chemistry Lab, and Pre-Calculus courses are in violation of the ADA;

b.    Issuing a permanent injunction enjoining Defendant from continuing its discriminatory practices, ordering Defendant to remediate the inaccessible nature of the Comp II, College Algebra, Basic Computer, Trig, Chemistry, Chemistry Lab, and Pre-Calculus courses and make each accessible and usable by blind individuals to the extent required by the ADA;

c.      Declaring that Defendant's MyCourses system and Comp II, College Algebra, Basic Computer, Trig, Chemistry, Chemistry Lab, and Pre-Calculus courses are in violation of the Rehabilitation Act;

d.      Issuing a permanent injunction enjoining Defendant from continuing its discriminatory practices, ordering Defendant to remediate the inaccessible nature of the MyCourses system and the Comp II, College Algebra, Basic Computer, Trig, Chemistry, Chemistry Lab, and Pre-Calculus courses and make the each accessible and usable by blind individuals to the extent required by the Rehabilitation Act;

e.      Awarding Plaintiff his reasonable attorneys' fees, litigation expenses, and costs.

## SPOLIATION DEMAND

Plaintiff demands that Defendant preserve all documents, tangible things, and electronically stored information (ESI) potentially relevant to the issues in this cause. "Defendant," as used in this Demand refers to St. Petersburg College Board of Trustees, and its respective predecessors, successors, parents, subsidiaries, divisions, or affiliates, and their respective officers, directors, agents, attorneys, accountants, employees, partners, or other persons occupying similar positions or performing similar functions.  This demand includes, but is not limited to, the suspension of features of Defendant's information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI.  Examples of such features include the purging of contents of e-mail repositories by age, capacity, or other criteria, using data wiping devices or services, overwriting, erasing or destroying back-up media, re-assigning, re-imaging or disposing of systems, servers, and devices.

Dated: November 5, 2018

Respectfully submitted,

**SWIFT & ISRINGHAUS, P.A.**

_/s/ Jordan T. Isringhaus_
**Jordan T. Isringhaus, Esq., FBN 0091487**
**Lead Trial Counsel**
Aaron M. Swift, Esq., FBN 0093088
10460 Roosevelt Blvd. North, Suite 313
St. Petersburg, FL 33703
Phone: (813) 563-8466
Fax: (727) 255-5332
jisringhaus@swift-law.com
aswift@swift-law.com
_Attorneys for Plaintiff Jenkins_