UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JON D. JENKINS,

      Plaintiff,

v.                                                                    Case No. 8:18-cv-2718-MSS-SPF

ST. PETERSBURG COLLEGE BOARD
OF TRUSTEES,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter comes before the Court upon Plaintiff's Motion for Entitlement to Attorney's Fees Incurred by Pro Bono Counsel, and to Adjudicate Charging Lien and Allocate Claims for Attorney's Fees (Doc. 65); Swift, Isringhaus & Dubbed, P.A.'s ("Swift Law") Motion to Adjudicate and Enforce Charging Lien and Response in Opposition to Plaintiff's Motion (Doc. 67); and Plaintiff's Response in Opposition to Swift's Motion (Doc. 72). For the reasons discussed herein, it is recommended that Plaintiff's motion be granted, and Swift Law's charging lien be discharged.

## BACKGROUND

The facts relevant to these motions are largely undisputed. Plaintiff retained Swift Law to file the instant lawsuit, and they executed an ADA and Rehabilitation Act Retainer Agreement (the "Engagement Agreement") on or about June 27, 2018. The Engagement Agreement states that "Swift Law's employment is on a contingent basis" and contemplates that Swift Law would be paid from any prevailing party attorney's fees awarded to Plaintiff in connection with the representation against Defendant. On November 5, 2018, Plaintiff

filed a complaint against Defendant alleging claims for declaratory relief, injunctive relief, and attorney's fees under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA") and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* (the "Rehabilitation Act"). (Doc. 1).

On June 24, 2019, Swift Law filed an Unopposed Motion to Withdraw as Counsel for Plaintiff and Notice of Charging Lien (the "Motion to Withdraw"). (Doc. 24). The circumstances surrounding Swift Law's withdrawal are disputed. Swift Law contends that it was discharged while Plaintiff believes that Swift Law withdrew on its own volition. On June 25, 2019, the Court granted the Motion to Withdraw (Doc. 25), and Plaintiff was considered proceeding *pro se*.

In October of 2019, the Court placed a request for pro bono assistance pursuant to the Plan for Pro Bono Representation by Appointment in Civil Case (the "Pro Bono Plan"). Erik Johanson, an attorney with Jennis Law, received and responded to the Court's request, and the Court appointed Johanson as Plaintiff's counsel ("Pro Bono Counsel") pursuant to the Pro Bono Plan on October 23, 2019. (Doc. 37). In July 2020, Johanson left Jennis Law and formed Erik Johanson PLLC. The Court entered an order on August 18, 2020, clarifying that the case would remain Johanson's responsibility pursuant to the Court's appointment under the Pro Bono Plan. (Doc. 47).

The undersigned conducted a judicial settlement conference with the parties on May 7, 2021, at which the parties reached a settlement in principle. (Doc. 62). Among other terms, the settlement contemplated that Defendant would pay Plaintiff a total of $45,000 to be applied towards attorney's fees and costs incurred in the case. (Doc. 62-1 at 12). The distribution of the $45,000 between Swift Law and Pro Bono Counsel is the subject of the

parties' motions. More specifically, Plaintiff moves for a determination that he and his legal counsel are entitled to attorney's fees for services performed pro bono and to adjudicate the charging lien asserted by Swift Law. In turn, Swift Law argues that the Engagement Agreement assigned all attorneys' fees recovered to Swift Law, Plaintiff agreed to a written distribution methodology, and waived any objections to Swift Law's withdrawal and charging lien. In addition, Swift Law argues that Pro Bono Counsel is not entitled to a fee because of his plan to share recovered attorneys' fees with Plaintiff and the resulting improper financial incentive for Plaintiff to initiate fee litigation. Swift Law seeks a court order adjudicating the charging lien as valid, enforcing the charging lien against the settlement funds, and denying Plaintiff's motion; or, in the alternative, adjudicating the charging lien as valid and reserving jurisdiction to consider the amount of the charging lien.

## DISCUSSION

Florida common law defines a charging lien as a mechanism by which an attorney may enforce his equitable right to have costs and fees owed for legal services secured by the judgment or recovery in a lawsuit. *See Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom*, 428 So.2d 1383, 1384 (Fla. 1983); *Flynn v. Sarasota Cnty. Pub. Hosp. Bd.,* 169 F. Supp. 2d 1363, 1368 (M.D. Fla. 2001). "No statutes outline the requirements for valid attorney's liens in Florida. Rather case law acts as the sole guide for both attorneys and courts as to these liens." *Daniel Mones, P.A. v. Smith*, 486 So.2d 559, 561 (Fla. 1986). In order to impose a charging lien, a court in equity must find: (1) an express or implied contract between the attorney and the client; (2) an express or implied understanding that payment is either contingent upon recovery or will be paid from the recovery; (3) an attempt by the client to avoid paying or a dispute as to the amount of the fee; and (4) a timely notice of a request for

3

a lien. *Id.*; *Sinclair*, 428 So.2d at 1385. Plaintiff does not dispute that Swift Law has satisfied the elements necessary to assert a charging lien. (Doc. 72 at 2). Instead, Plaintiff contends that Swift Law's charging lien is not valid or enforceable because "Swift Law voluntarily withdrew and/or was terminated for cause from its representation of the Plaintiff." (Doc. 72 at 2).

Plaintiff, however, fails to expound on this argument beyond counsel's unadorned representation that "Plaintiff believes that Swift Law withdrew on its own volition." (Doc. 65 at 2 n.2). Plaintiff offers neither an explanation as to the basis for the belief nor evidence supporting the belief. The Court need not develop conclusory arguments or address arguments unsupported by authority. *See Ward v. Carnival Corp.*, No. 17-24628-CV-SCOLA/TORRES, 2019 WL 1228063, at *6 (S.D. Fla. Mar. 14, 2019) ("[movant's] conclusory claim that the doctor's testimony will not assist the trier of fact – set forth in a throwaway paragraph, without citation to a single legal authority supporting the argument – is likewise ineffective"). Based on the parties' arguments and the evidence presented to the Court, it concludes that Swift Law has established the elements of a charging lien and was terminated without cause. (*See* Doc. 67 at 4-12); *see also Brickell E. Condo. Ass'n, Inc. v. Indian Harbor Ins. Co.*, No. 18-24791-Civ-WILLIAMS/TORRES, 2020 WL 869725, at *3 (S.D. Fla. Jan. 10, 2020) (assuming termination without cause given the omission of any other argument). The issue then becomes a determination of the amount to be awarded to Swift Law pursuant to the charging lien.

It is well settled that an attorney who performed services on a contingency basis and who was discharged before the contingency was accomplished, as is the case here, may recover for his services only in quantum meruit. *See Sohn v. Brockington*, 371 So.2d 1089, 1093

(Fla. 1st DCA 1979). If an attorney is discharged without cause, compensation is based on the reasonable value of services rendered prior to discharge, not to exceed the maximum fee provided in the fee agreement.[1] *Rosenberg v. Levin*, 409 So.2d 1016, 1021 (Fla. 1982). "While the trial court may consider a lodestar calculation in determining a firm's quantum meruit, the court errs as a matter of law if it fails to consider 'other factors surrounding the professional relationship that would assist the court in fashioning an award that is fair to both the attorney and client,' such as the reason the firm was discharged, actions taken by the firm or client before or after discharge, and the benefit actually conferred on the client." *Buckley Towers Condo., Inc. v. Katzman Garfinkel Rosenbaum, LLP*, 519 F. App'x 657, 665 (11th Cir. 2013)[2] (quoting *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So.2d 366, 369 (Fla. 1995)). That is, "[u]nlike an award of attorney's fees to a prevailing party, a quantum meruit award must take into account the actual value of the services to the client." *Id.* (quotation omitted and alteration in the original). Other factors that may be considered include the recovery sought, the skill demanded, the results obtained, and the attorney-client contract itself. *Rosenberg*, 409 So.2d at 1022. Ultimately, "[t]he determination as to which factors are relevant in a given case, the weight to be given each factor and the ultimate determination as to the amount to be awarded are matters within the sound discretion of the trial court." *Poletz*, 652 So.2d at 369.

---

[1] If an attorney is discharged for cause, forfeiture of some or all of the quantum meruit fee may be appropriate. *See, e.g., Kushner v. Engelberg, Cantor & Leone, P.A*, 699 So.2d 850, 851 (Fla. 4th DCA 1997) ("an attorney discharged for cause is entitled to the quantum meruit value of the services rendered less any damages which the client incurred due to the attorney's conduct and discharge").
[2] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

Here, Swift Law has offered little to no argument or evidence regarding any of the aforementioned factors other than it seeks a charging lien in the amount of $31,000. Pro Bono Counsel represents that Swift Law provided him with an excel spreadsheet reflecting a total of 99.5 hours of time incurred by Swift Law in connection with its representation, totaling $29,850, plus $1,150 in costs, for a total of $31,000. (Doc. 65 at 5, ¶ 13; *see also* Doc. 67-2 at 2). Apparently, the spreadsheet did not include any detailed time entries and instead stated "TimeEntry" under the description category. (Doc. 65 at 5, ¶ 13). Swift Law, however, did not provide this spreadsheet to the Court. Moreover, Swift Law did not identify the attorney(s)/timekeepers included in the total hours[3] or provide any billing records or testimony regarding the tasks conducted because, Swift Law asserts, the Court need not engage in a lodestar analysis being that Plaintiff assigned "each and every fee and costs sum recovered" to Swift Law in the Engagement Agreement. (Doc. 67 at 13). Swift Law's Engagement Agreement, however, clearly indicates that Swift Law's employment is on a contingency basis (Doc. 67-1 at 2-4). Swift Law fails to cite to any authority to support its proposition that the Engagement Agreement obviates a quantum meruit award.

Swift Law requests, in the alternative, that, should the Court determine it necessary to determine a quantum meruit award, the Court reserve jurisdiction to consider the lodestar amounts by separate briefing. (Doc. 67 at 13). While Swift Law adequately establishes is costs,[4] it otherwise fails to address any of the factors surrounding the professional relationship

---

[3] The Engagement Agreement, which is attached to Swift Law's motion, states that, in the event the Court finds or holds that Plaintiff is entitled to attorneys' fees, Plaintiff agrees to pay Swift Law at the following rates based upon contemporaneously kept time records: Jordan T. Isringhaus, Esq. - $300; Aaron M. Swift, Esq. - $300; all other Swift Law attorneys - $250; law clerks - $120; and paralegals/support staff - $100. (Doc. 67-1).

[4] Swift Law provided that its claimed costs of $1,150.00 consists of the $400.00 filing fee and $750.00 mediation fee (Doc. 67-4).

that would assist the Court determining an award that is fair to both Swift Law and Plaintiff, and the Court would err as a matter of law if it were to only consider Swift Law's lodestar calculation in determining quantum meruit. *See Buckley Towers*, 519 F. App'x at 665. As such, the Court need not allow additional briefing on the lodestar calculation. Because Swift Law may only recover quantum meruit for its services and has neglected to submit any evidence—other than its total hours and rate—upon which the Court can make such a determination, Swift Law's should be denied. *See Benchmark Consulting, Inc. v. USAA Cas. Ins. Co.*, 8:18-cv-3134-T-24CPT, 2020 WL 5701750, at *7-8 (M.D. Fla. Sept. 24, 2020) (finding evidence insufficient to award quantum meruit where attorneys only stated the total amount claimed and did not provide time spent or hourly rates charged or provide any billing records); *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 & n.2 (11th Cir. 1988) ("[N]o additional evidentiary hearing or pleadings are required where fee counsel fails to provide evidence on some factor which it contends the court ought to take into account. . . [T]he district court should not depart from its position of neutrality to coach either party on the proper preparation of their pleadings.").

This leaves a determination of Pro Bono Counsel's entitlement to attorney's fees for pro bono services. The parties do not dispute that pro bono counsel generally may be entitled to an award of attorneys' fees and costs. *See Blanchard v. Bergeron*, 489 U.S. 87, 94-95 (1989). It is the fact that Pro Bono Counsel expressed a desire or intent to donate those funds to Plaintiff and/or a qualified charity that is causing the opposition to any such award. Swift Law argues that the Court "must deny Pro Bono Counsel's request for entitlement in order to ensure that he does not share attorneys' fees with Plaintiff either directly or via a pass-through vehicle and to protect the integrity of the Court and the pro bono appointment

7

program." (Doc. 67 at 14). More specifically, Swift Law asserts that if Pro Bono Counsel were to donate his fees, he would be in violation of the Florida Rules of Professional Conduct, specifically Rule 4-5.4(a) (providing, with certain exceptions, that a lawyer or law firm shall not share legal fees with a nonlawyer).

It is worth noting that the donation of pro bono attorneys' fees to charitable organizations appears to be common practice in any number of states. *See, e.g.,* Scott L. Cummings & Deborah L. Rhode, *Managing Pro Bono: Doing Well by Doing Better*, 78 Fordham L. Rev. 2357, 2389 (2010) (noting that, in a national survey of firms with pro bono programs, it is not unusual for firms to accept cases on a pro bono basis but later collect fees, and, for purposes of its pro bono rankings, "The American Lawyer [a monthly legal magazine and website] requires (for the purposes of pro bono reporting) that in cases where fees are available, firms commit ex ante 'to donate their fees to legal services organizations, to their own charitable foundations, or into an earmarked firm account to cover pro bono expenses'"); *see also* Matt Perez, *Cravath Donating $6M Fee to Groups Supporting Civil Rights*, Law360, June 16, 2021 (reporting that Cravath Swaine & Moore LLP announced that it is donating $6 million earned in pro bono attorney fees to five national and local Alabama organizations supporting civil rights and diversity efforts). It certainly should come as no surprise that attorneys, like Pro Bono Counsel, who selflessly volunteer their time to provide pro bono services may also wish to donate any fee award they receive.

The parties here, however, do not cite to any relevant authority addressing the donation of pro bono fees to charitable organizations (or to a plaintiff[5]) under the Florida

---

[5] The "Unconditional Guilty Plea for Consent Judgment" (Doc. 67-5), to which Swift Law cites, is unavailing for purposes of informing this Court's recommendation.

Rules of Professional Conduct, and the Court is unaware of any.  Moreover, while Pro Bono Counsel has publicly stated his intention to donate his attorney's fees, he is not required to do so.  As such, what the parties seek is an advisory opinion as to whether settlement proceeds for attorneys' fees may be donated to Plaintiff and/or a qualified charity without violating the Florida Rules of Professional Conduct.  However, "[t]his Court does not give parties advice on whether they complied with the applicable law.  Nor have federal courts been able to offer such advisory opinions for about two hundred years." *Bennett v. Transunion, LLC*, No. 2:21-cv-770-SPC-NPM, 2021 WL 5015532, at *1 (M.D. Fla. Oct. 28, 2021) (citing Note, *Advisory Opinions and the Influence of the Supreme Court Over American Policymaking*, 124 Harv. L. Rev. 2064, 2066-67 (2011) (explaining historical evolution of the restriction on advisory opinions)).  Likewise, the indication by Pro Bono Counsel that he intends to donate attorney's fees to Plaintiff or to a charity is not a sufficient basis upon which to prophylactically deny a pro bono counsel entitlement to an award of fees, as is argued by Swift Law.  As such, Plaintiff's motion should be granted to the extent it seeks disbursement of the $43,500.00[6] in settlement proceeds for attorney's fees and costs to Pro Bono Counsel.

Accordingly, it is hereby **RECOMMENDED**:

(1) Plaintiff's Motion for Entitlement to Attorney's Fees Incurred by Pro Bono Counsel, and to Adjudicate Charging Lien and Allocate Claims for Attorney's Fees (Doc. 65) be **GRANTED IN PART** and **DENIED IN PART**.  The motion be **GRANTED** to the extent that the $43,500.00 settlement proceeds for attorney's fees and costs be disbursed to Plaintiff's pro bono counsel, Erik Johanson, and

---

[6] $43,500.00 represents the $45,000.00 in total settlement proceeds for attorney's fees and costs (Doc. 62-1) less the $1,150.00 in costs incurred by Swift Law.

9

Swift Law's charging lien in excess of $1,500.00 (Doc. 24) be discharged. The motion otherwise be **DENIED**.

(2) Swift Law's Motion to Adjudicate and Enforce Charging Lien and Response in Opposition to Plaintiff's Motion (Doc. 67) be **GRANTED IN PART** and **DENIED IN PART**. The motion be **GRANTED** to the extent that $1,150.00 in settlement proceeds for attorney's fees and costs shall be disbursed to Plaintiff's former law firm, Swift Law, in satisfaction of its charging lien. The motion otherwise be **DENIED**.

**IT IS SO REPORTED** in Tampa, Florida, on January 4, 2022.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. Failure of any party to timely object in accordance with the provisions of § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1.

cc:  Hon. Mary S. Scriven